59946. THIRD WORLD, LTD. NO. II, INC. et al. v. BREWMASTERS OF AUGUSTA, INC. et al.

Birdsong, Judge.

Under a lease purchase agreement, effective January 30, 1976, appellants Third World Ltd. No. II, Inc. ("Third World") and James Brown took possession of a former restaurant owned by the appellees ("Brewmasters"), and converted it to a nightclub business. The agreement provided for monthly lease payments of $6,175 for twenty months and obligated Third World to then purchase the property for $370,445 less lease payments. As security for the agreement, Brewmasters demanded and received a deed to secure debt on certain other property of Brown.

After making lease payments of approximately $90,000, Third World became in default and in a proceeding against tenant holding over, Brewmasters obtained a $25,000 judgment for past due rentals. Thereafter, in May, 1977, Third World gave Brewmasters $28,000 to hold in escrow, allegedly in effort to effect a settlement between the

parties, which Third World contended Brewmasters exacted so as to permit Third World to cure the default and remain on the premises. Brewmasters nevertheless evicted Third World in June because of a further failure to pay rentals for May and June, failed or refused to return the $28,000, or satisfy its judgment with it, and sought to foreclose on the property named in the deed to secure debt. Third World filed an action against Brewmasters seeking return of the $28,000, and seeking damages over $200,000 arising from breach of the alleged settlement agreement and wrongful eviction, and injunction against the foreclosure. Brewmasters counterclaimed in four counts, including $100,000 damages for fraud by Third World and James Brown in furnishing a deed to secure debt which, contrary to representations, was subject to a prior encumbrance. Brewmasters sought attorney fees for Third World's stubborn litigiousness; in count 4, Brewmasters sought attorney fees for bad faith, and stubborn litigiousness, and sought $500,000 exemplary damages on account of the fraud alleged. At trial, Third World abandoned its own claim for damages, but insisted on return of the $28,000 "escrow" amount as a set-off. From a jury verdict against it of $75,193 for breach of contract, $11,000 attorney fees, and $75,000 punitive or exemplary damages, Third World appeals. *Held:*

1. It was not error to refuse to direct a verdict for Third World on the basis that the lease-purchase agreement was executed by only one general partner of the Brewmasters partnership. There is no evidence that the signatory was not authorized under the Brewmasters partnership agreement to contract to convey property for the partnership and in the partnership name, and no rule or authority has been presented which would prohibit such conveyance as a matter of law. See Code Ann. § 75-410, and *Hammond v. Chastain,* 230 Ga. 747 (199 SE2d 237); *Tara Apts. v. Citizens &c. Bank,* 149 Ga. App. 577 (254 SE2d 897). Moreover, the contract was in performance, was ratified and affirmed by the partnership which sought to enforce it, and was never repudiated by the partnership on the basis of any defect, and moreover, could not lawfully be repudiated as against Third World (see *Shell Petroleum Corp. v. Jackson,* 47 Ga. App. 667, 672 (4) (171 SE 171)); and therefore, any such alleged defect was not in any case something which Third World could assert to avoid its own obligation.

2. In enumerations 2 and 3, Third World urges that the trial court erred in denying its motion for new trial in that the award of punitive damages and attorney fees is unauthorized as a matter of law; and in charging Brewmasters' requested fraud charge over Third World's objection that it was incomplete and therefore incorrect.

We cannot say that an award of attorney fees on the basis of

stubborn litigiousness in this case is unauthorized. The disparity between the amount of damages prayed for and the amount awarded indicates that there was a bona fide controversy at least as to the *amount* of Third World's liability, but appellant Third World suffered Brewmasters to litigate Third World's own claims for damages until the close of Third World's case as plaintiff, when it dismissed all its claims for damages and sought only a set-off for $28,000 had and received. See *Georgia-Carolina Brick &c. Co. v. Brown,* 153 Ga. App. 747 (2), 754 (266 SE2d 531). By its own admission, there could not have been reasonable grounds or probable cause to prosecute and litigate the claims (*Ken-Mar Construction Co. v. Bowen,* 245 Ga. 676 (266 SE2d 796)); if there were any bona fide controversy therein, Third World did not show it. *Georgia-Carolina Brick,* supra. There is therefore evidence to support the award of attorney fees in the case and we will not reverse it (*Ken-Mar Construction Co.,* supra).

The punitive damages award in the amount of $75,000, however, is another matter. Punitive or exemplary damages were sought for Third World's fraud in furnishing a deed to secure debt which was misrepresented as not being subject to any other liens. In fact, the deed to secure debt was subject to a prior recorded deed to secure debt.

One of the general partners of Brewmasters testified that he was an experienced restauranteur and businessman; he had owned and bought many restaurants in southeastern states; that in this case he had had "horrible visions" of James Brown's being unable to perform the contract, and had earlier refused to accept an offer of security in a radio station owned by Brown after he had legal counsel check it out and determined it to be otherwise encumbered, and that to accept that security would have been poor business indeed; but that when Brown's attorney represented to the general partners that the title to the second property offered as security was free and clear, they relied on Brown's attorney's representations. The partners' justification for relying on Brown's attorney was that in Florida, the partnership's principal place of business, it is the "custom" to rely on the seller's presentations as to good title because it is the seller's duty to provide evidence of clear title; and that the reason they did not hire an attorney to check the title was that in Florida, they have what they call the title insurance concept and "abstracting and that sort of thing is almost antiquated"; and in Florida, he had not "seen an opinion of title by a lawyer in years." Further, he thought the fee for such a search in the Richmond County courthouse would be prohibitive because he could not imagine, and found it very difficult to believe, that a lawyer would charge $50 for a title search when the

lawyer stood to be sued and liable for $150,000 because he missed something in the chain of title. The witness was very confused by, and saw no logic in the suggestion that he might have hired his own lawyer to check the title because, he said, he was relying on Brown's attorney to give the title opinion; he testified that it therefore honestly never occurred to him to call another lawyer.

It is well-settled in this state, at least, that no cause of action for fraud exists in one who buys or accepts security in land while failing to exercise any diligence for his protection, "and asserts that he blindly relied on the representations of the seller as to matters of which he could have informed himself." In such a case, "it can not be said that the purchase originated in fraud so much as in the carelessness of the purchaser to exercise ordinary care for his own interest." *Browning v. Richardson,* 181 Ga. 413, 415 (182 SE 516). Certainly no fiduciary relationship existed between Brewmasters and the other party's attorney, and no trick or device prevented Brewmasters from the simple act of checking the title. *Browning,* supra, p. 416. In the most ordinary course of business affairs they should have done it, particularly since they had such an admittedly heightened sense of foreboding in the affair. It follows that there being no actionable fraud in the case, there is no basis for punitive damages on account of it. The appellant objected to the court's charge which totally omitted any reference to the necessity for ordinary diligence and the right to rely on the misrepresentation, and if the evidence were equivocal, we would reverse and grant a new trial; but it would be erroneous to do so since the evidence in the case shows as a matter of law that Brewmasters cannot claim the fraud, and is not entitled to punitive damages therefor.

*Judgment affirmed in part and reversed in part. Deen, C. J., and Sognier, J., concur.*

SUBMITTED MAY 6, 1980 — DECIDED JULY 15, 1980.

*Kenneth R. Chance,* for appellants.
*Patrick J. Rice, David B. Bell,* for appellees.