65300, 65301. ALLEN v. BRACKETT; and vice versa.

QUILLIAN, Presiding Judge.

James Brackett brought a complaint in the State Court of Hall County against Gloria Allen alleging that she owed him the sum of

$1901.26 for money loaned to her by the plaintiff. The defendant answered the complaint denying that she had borrowed any money from the plaintiff whatsoever. The answer set forth that both parties had purchased gifts and made gifts to each other but positively denied that the defendant was indebted to the plaintiff.

The case came on for trial before a jury which returned a verdict for the plaintiff in the sum sought.

After entry of judgment on the verdict of the principal amount plus interest, the defendant appealed to this court (Case 65300). *Held:*

Briefly, the facts giving rise to this suit are as follows. During the time from the latter part of 1977 through Christmas of 1980 the parties "dated." After the termination of their relationship, the plaintiff sought to obtain $2613.22 which he contends and testified that he loaned the defendant. On the trial the defendant admitted that she agreed to pay the plaintiff back for some of the checks given her "if he would leave me alone," but she also testified that the sums were gifts or exchanges or in the case of a check for $300 given as recompense for damages the plaintiff inflicted on her automobile. It also appeared that the defendant had given the plaintiff checks totaling $550 and the plaintiff conceded she was entitled to other "credits" of approximately $162; so that, under the plaintiff's version of the events, the defendant owed a balance of $1901.26.

1. The defendant contends it was error to admit two of the plaintiff's exhibits (Nos. 13 and 14) which were offers with a view to compromise and thus inadmissible under Code Ann. § 38-408 (now OCGA § 24-3-37).

Exhibit 13 was a letter from plaintiff to defendant styled "Outstanding loans." The letter stated:

"Enclosed is a tally, or record sheet, as I can best determine. I would appreciate a quick response to this matter if possible. I have endeavored to explain each item in total honesty and welcome any discussion on any point.

"In regard to this clutch, I have searched (physically and spiritually) for evidence relating to this point and *cannot* determine, or recollect, *any* agreement whatsoever pertaining to such. Furthermore, as God is my witness, I cannot remember any conversation about the subject. At any rate, a clutch can be installed for around $200 today (it would have been less over a year ago).

"Please examine the statement and contact me soon."

Attached to the letter was plaintiff's recitation and calculations as to what balance the defendant owed.

Exhibit 14 was a letter from defendant's fiance responding to plaintiff's letter. The letter began:

"Gloria and I will soon be husband and wife. I know of her annoyance in regards to the matter discussed in your letter of February 4, 1981. Because of that annoyance, we agreed that I should respond to that letter.

"While, I cannot say that it is a pleasure, I appreciate the opportunity to relieve her of this problem.

"We have discussed the situation at great length and while 'being fair,' is all in one's mind, we have determined that the attached agreement is more that [sic] fair and the figures are what we will do and all that we will do.

"You must understand:

"-Accept the attached.

"-Receive nothing."

It then set out certain terms and conditions for payment. One of the crucial conditions was that the plaintiff not contact either of them again, on pain of voiding the proposal. As stated in the letter: "We don't want to hear from you ever again." Attached thereto was a sheet listing the "detail of balance," which, using many of the plaintiff's figures, set forth "amounts given" (by plaintiff) less "amounts repaid" (by defendant) and "less checks cashed" (from defendant to plaintiff) and reached a balance of $1502.80 (which included a mathematical error of $5; using the designated figures the correct sum should have been $1,507.80).

The attorney for the plaintiff argued, and also contends before this court, that the letter constituted an offer of payment, not compromise. The trial judge held that the letter was an agreement or promise to answer for the debt of another under Code Ann. § 20-401 (2) (OCGA § 13-5-30 (2)) and was therefore admissible.

We find the rationale of the trial judge not sustainable. In 31A CJS 728, Evidence, § 285 (a) it is pointed out: "While the prohibition against a reference to an offer of compromise inures only to the benefit of the proponent of the offer, it makes no difference whether the offer is made directly by one party to the other or through an intermediary." See 29 AmJur2d 681, Evidence, § 629. An offer to compromise is inadmissible in evidence, and the one to whom or through whom the offer is made is not the decisive factor. Smith v. Ramsey, 256 Ark. 1098 (513 SW2d 501). This comports with obvious intent of our Georiga Code section and is adopted as the correct basis for consideration of such issue. A determination must be made as to whether the offer made on behalf of the defendant was one of settlement or compromise not as to whether Code Ann. § 20-401 (2) applied. We, therefore, consider whether the ruling by the trial judge was otherwise right for any reason.

"Code § 38-408 was created in order to encourage settlements by

letting a party which makes an admission or proposition with a view toward compromise rest assured that its good-faith settlement attempt will not later be used against it in court." *Benn v. McBride,* 140 Ga. App. 698, 701 (6) (231 SE2d 438). In discussing this Code section it has been further pointed out "The rule against allowing evidence of compromises is founded upon recognition of the fact that such testimony is inherently harmful, for the jury will draw conclusions therefrom in spite of anything said by the parties at the time of discussing the compromise, and in spite of anything which may be said by the judge in instructing them as to the weight to be given such evidence." *Ga. R. & Elec. Co. v. Wallace,* 122 Ga. 547, 551 (50 SE 478). Accord, *Newton Brothers, Inc. v. Shank,* 240 Ga. 471, 472 (241 SE2d 231).

When construing Code Ann. § 38-408 (OCGA § 24-3-37) an important distinction has been noted between "an offer or proposition to compromise a doubtful or disputed claim, and an offer to settle upon certain terms a claim that is unquestioned. An admission made in an offer of the latter character will be admissible when one made in an offer of the former character will not." *Teasley v. Bradley,* 110 Ga. 497, 507 (35 SE 782). If the facts showed no more than a demand for payment and an offer to accede to plaintiff's demand upon certain terms then there is no offer to compromise within the meaning of the Code section. See *Pacific Nat. Fire Ins. Co. v. Beavers,* 87 Ga. App. 294, 296 (73 SE2d 765), wherein it was held that the crucial issue is whether there was shown a purpose on the part of either plaintiff or defendant to surrender any alleged right for the purpose of reaching a compromise or disposing of the dispute. Accord, *Campbell v. Mutual Svc. Corp.,* 152 Ga. App. 493, 494 (263 SE2d 202).

A reading of the two writings herein involved leads to the conclusion that they comprise a compromise offer and not an offer to settle. First of all, the plaintiff's letter is not a demand for an exact sum but instead sets out what he believes is owed to him and invites the defendant to respond and to set forth her contentions. This is manifest from language such as "as I can best determine"; "I have endeavored to explain each item in total honesty and welcome any discussion on any point"; "I have searched . . . for evidence and *cannot* determine, or recollect, *any* agreement," etc.

The language of the response is not so conciliatory but does set forth what the defendant is willing to do and clearly expresses an attempt to "buy peace" and conclude the matter so that the plaintiff will no longer contact or bother the defendant about the matter. This is reiterated and reemphasized and is included as the controlling factor in the offer made to the plaintiff, to wit: the primary condition

being that the plaintiff must not contact the defendant again.

It seems clear from the figures used by the parties which amount to a difference of less than $400 that the principal disagreement as to the amount involved is the check for $300 which plaintiff considered a loan and the defendant contended was given her for damage to the clutch of her automobile which resulted from use by the plaintiff. The parties were attempting to reach some sort of understanding revolving around the core issue as to that check, plus a few minor items.

We, therefore, hold these two exhibits to constitute evidence of offers of compromise on behalf of each of the parties and therefore inadmissible under Code Ann. § 38-408 (OCGA § 24-3-37).

2. The defendant also complains of the trial judge's failure to admit evidence of the purpose for which the checks were given.

During the course of the trial the defendant sought to explain that certain of the checks were given as gifts or because of some legal, or perhaps moral, obligation on the plaintiff's part, and that such checks were therefore not given as loans. The trial judge excluded such evidence since he reasoned that the defendant had filed no plea of set-off or counterclaim and this evidence was offered to sustain a plea of such character.

We agree that the use made of the funds obtained from the checks would not necessarily be relevant. Moreover, if the plaintiff had damaged property of the defendant who in turn had to expend money for the purpose of repairing same this would be in the nature of a set-off and properly subject of a counterclaim on defendant's part. However, the outright rejection of the defendant's testimony overlooks the critical issue as to which the defendant was entitled to dispute and to offer evidence — whether the checks were given as part of a loan agreement or as a gift or as recompense.

It is true that one has to affirmatively plead many defenses such as failure of consideration. However, it is equally pertinent that one need not affirmatively plead the defense of non est factum — that there was no executed contract. See *Spurlock v. Commercial Bkg. Co.,* 151 Ga. App. 649, 652 (260 SE2d 912) and cases cited therein. In the case sub judice the defendant by answer denied the checks were given her as loans. Thus, she raised the issue and cast the burden on the plaintiff to show the existence of an arrangement or agreement (oral of course) under which the plaintiff loaned the defendant money. By denying the existence of the loan she was entitled to show the real purpose for which the checks were given. She could thereby show why the plaintiff gave the checks to her even though it was, indeed, irrelevant as to what use she made of such checks or the moneys therefrom afterwards.

In *Jinright v. Russell,* 123 Ga. App. 706, 708 (182 SE2d 328) this court considered whether a contract existed between two parties as evidenced by a check containing the notation "For Binder on Store." The court held: "In our view the signed check in the present case, with its notation 'For Binder on Store,' meets all of the requirements of a writing sufficient to indicate that a contract for sale was made between the parties. The check does not prove a contract, but it would authorize the introduction of oral evidence toward that end. The party asserting the contract still must bear the burden of proving its existence and the terms." Accord, *Carter v. Kim,* 157 Ga. App. 418 (277 SE2d 776).

In this case the check with the notation "loan" would be evidence of a contract between the parties but the plaintiff still would have the burden of establishing its existence and its terms. Moreover, the defendant by denying its existence could thereafter offer evidence that there was no loan arrangement or agreement between the parties but instead there was a gift or a payment given to reimburse the defendant for damages or for whatever reason.

In essence the plaintiff sought to prove that he and defendant had an agreement by which he loaned her money, while the defendant denied this. Each party was entitled to establish by all available proof for what purpose the checks were given. It was therefore error to exclude defendant's testimony in this regard.

Counsel for the plaintiff urges the harmless error rule in that the defendant was permitted on several occasions to state what was the purpose for which some of the checks were given. Besides carefully perusing the entire transcript we have thoroughly examined those portions which are specified.

At one point, on direct examination of the defendant by her counsel regarding the $300 check, inquiry was made as to what was the check given for and objection to such question was sustained. Counsel then asked, "What was that check used for?" Defendant answered, "It was used to pay for an airplane ticket and fix the clutch in my car." This was with regard to how the check was used but does not show the purpose for which it was given. Hence, it did not constitute testimony of similar import.

At another point on cross-examination of the defendant, prior to any objections being sustained as to questions regarding for what purpose were the checks given to the defendant, counsel referring to those checks for $1500, $600 and $300 asked: "Were these loans or gifts?" Defendant responded: "I thought they were repayments of items he owed me." Subsequently referring to the balance defendant kept as to monies exchanged counsel asked her what was the reason for not having entered the $300 check and received the reply: "It was

never brought up, it was in payment for damage to the car."

Once direct examination of the defendant began and thereafter, all questions regarding the purposes of the checks were barred.

The exclusion of testimony is not harmful error where similar testimony is admitted, or as stated in *Jackson v. Dept. of Transp.,* 159 Ga. App. 130, 134 (283 SE2d 59), "where counsel is able to adduce substantially the same evidence in other forms, the failure to obtain admission of the evidence in the form he desires is neither error nor discernibly harmful."

In the case sub judice the trial judge made it clear through several rulings that evidence by the defendant as to why the checks were given her was inadmissible. This would have had no other effect than to confuse the jury and cause them to disregard any statement by defendant regarding such issue. To merely exclude certain testimony at one point and then permit other testimony of like import to be introduced is far different from the present situation where the trial judge after having perhaps inadvertently allowed one or two statements to have been offered in such regard thereafter constantly excluded testimony involving the given subject. Clearly, in the first instance there is no harmful error while in the second it is hardly realistic to pontificate that no harm occurred.

Nevertheless, whether the exclusion of the critical testimony by defendant was reversible error in its own right, the case is reversed for the reasons set forth in Division 1 and, therefore, for guidance on the retrial of this case, we find that it was error to refuse to permit defendant to testify as to the purpose for which the checks were given.

3. Case 65301 is plaintiff's cross-appeal from refusal of the trial judge to submit the issue of attorney fees to the jury.

Code § 20-1404 (OCGA § 13-6-11) controls the imposition of attorney fees and it is necessary to show only one of the three statutory conditions of that section to authorize an award. *Marler v. River-Creek Assoc.,* 138 Ga. App. 471, 474 (4) (226 SE2d 311).

Under Code Ann. § 20-1404 (OCGA § 13-6-11) in order to recover attorney fees, the statutory bad faith must have arisen out of the transaction on which the cause of action is predicated rather than defendant's conduct in defending the case. *Raybestos-Manhattan, Inc. v. Friedman,* 156 Ga. App. 880, 883 (2) (275 SE2d 817); *Adams v. Cowart,* 224 Ga. 210, 215 (6) (160 SE2d 805). As to whether the defendant was "stubbornly litigious" or caused the plaintiff unnecessary trouble and expense, mere refusal to pay a disputed claim, without suit is not sufficient to award attorney fees. *General Refractories Co. v. Rogers,* 240 Ga. 228, 235 (2) (239 SE2d 795); *Gordon v. Ogden,* 154 Ga. App. 641, 642 (2) (269 SE2d 499).

There being no evidence to sustain a finding of attorney fees,

this cross-appeal shows no error.

*Judgment reversed in 65300; judgment affirmed in 65301. Sognier and Pope, JJ., concur.*

DECIDED FEBRUARY 11, 1983.

*Sam S. Harben, Jr.,* for appellant.
*W. Allen Myers,* for appellee.