## 70658. ASSOCIATED SOFTWARE CONSULTANTS ORGANIZATION, INC. v. WYSOCKI.
### (338 SE2d 679)

BEASLEY, Judge.

ASCO hired Wysocki in June, to begin August 2, after a recruiting company engaged by it located plaintiff. ASCO paid $6,000 in recruiting fees.

Wysocki resigned at the end of the following May and demanded $2,793.11 unpaid salary and expenses. ASCO refused, contending that by written agreement Wysocki had consented to reimburse the company for the recruiting fee should he leave before completing one year's employment. ASCO's position was that to partially satisfy this obligation it had the right to retain unpaid earnings. Denying such an agreement existed, Wysocki sued to recover the unpaid salary and expenses, vacation pay, legal expenses, and punitive damages for fraud. ASCO counterclaimed for the $6,000 recruiting fee plus $6,000 reimbursement for other expenses, but abandoned the latter.

At trial ASCO relied upon three documents to support its defense that it owed nothing and its claim that Wysocki had agreed to reimburse the recruiting fee: 1) a memo of June 27 from the general manager extending an offer of employment and including: "You will be asked to sign two agreements upon starting employment: the company Conflict-of-Interest agreement; and an agreement to reimburse the company for the recruitment fees if you leave ASCO's employ within the first 12 months"; 2) a letter from Wysocki dated June 29 addressed to ASCO's general manager, stating in part: "I have reviewed the terms of employment thoroughly and I find them more than adequate and readily acceptable"; 3) a purported copy of Wysocki's agreement to reimburse dated August 2, stating that as between ASCO and Wysocki: "1. The Company agrees to pay . . . the fee arising from the[ir] referral of the Employee to the Company ($6,000.00). 2. The Employee agrees that should he terminate his employment with the Company for any reason prior to the completion of one year's employment . . ., he will reimburse the Company for the full amount. 3. The Employee agrees that the Company may retain all unpaid earnings, bonuses, and termination pay toward the satisfaction of this obligation." There was some evidence that although this copy was signed only by ASCO's president, the original, now unavailable due to a ransacking of personnel files by an unknown intruder, was signed by Wysocki. There was also evidence that Wysocki never signed any agreement.

At the conclusion of the evidence, ASCO moved for a directed verdict on attorney fees, which was denied. Although it did not object at the precharge conference to the requests to charge on attorney fees and punitive damages, it did take exception to the punitive damages

instructions when the court gave opportunity following the charge. It, as well as plaintiff, had requested instructions on the elements of fraud. They were given to the jury twice, once during the charge and again when the jury asked for them.

The verdict and judgment were for Wysocki on his entire claim, including attorney fees and $5,000 punitive damages, and for Wysocki on ASCO's counterclaim. ASCO's motion for judgment notwithstanding the verdict or in the alternative for new trial, as to both the attorney fees and punitive damages, was denied.

Three errors are enumerated: as to attorney fees, that the court erred in denying the motion for directed verdict and the motion for judgment n.o.v. or new trial; as to punitive damages, that the court erred in so charging and in denying the motion for new trial thereon; and, as to "mutual departure," that the court erred in charging on the subject.

1. Attorney fees. ASCO asserts that Wysocki is not entitled to attorney fees because "the evidence demonstrated a genuine dispute over the terms of the employment and a bona fide controversy relating thereto, and there was no evidence to support . . . attorney's fees. . . ."

OCGA § 13-6-11 authorizes litigation expenses "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." All three circumstances were claimed and charged, but plaintiff had to demonstrate the existence of only one of the three enumerated grounds. *Allen v. Brackett*, 165 Ga. App. 415, 421 (3) (301 SE2d 486) (1983).

"[T]he statutory bad faith must have arisen out of the transaction on which the cause of action is predicated rather than defendant's conduct in defending the case. [Cits.]" Id. "[B]ad faith . . . other than mere refusal to pay a just debt may authorize the jury to award attorney fees, provided it is not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive." *Jordan Bridge Co. v. I. S. Bailey, Jr., Inc.*, 164 Ga. App. 124, 125 (296 SE2d 107) (1982). Our recent decision in *Glen Restaurant v. West*, 173 Ga. App. 204 (325 SE2d 781) (1984), recites that "there may be bad faith in carrying out the provisions of the contract sufficient to support the award, . . ."

"As to whether the defendant was 'stubbornly litigious' or caused the plaintiff unnecessary trouble and expense, mere refusal to pay a disputed claim, without suit is not sufficient to award attorney fees. [Cits.]" *Allen*, supra, 165 Ga. App. at 421. "The key to the test is whether there is a 'bona fide controversy.' Where none exists, forcing a plaintiff to resort to the courts in order to collect is plainly causing him to go to 'unnecessary trouble and expense.' " *Franchise Enterprises v. Ridgeway*, 157 Ga. App. 458, 460 (2) (278 SE2d 33) (1981).

There was evidence that ASCO fabricated the existence of the agreement to reimburse and tried to enforce its terms against Wysocki. He testified that he had never signed an agreement to reimburse, never agreed to its terms, and had not seen the alleged agreement until he had already submitted his resignation and requested his unpaid earnings. It was then, Wysocki testified, that the president of the company, in refusing his request, showed him the copy of the alleged agreement. Why it was signed only by the company president and not Wysocki was not explained. The president himself testified that, although his lawyers had drafted the "agreement" and had directed the general manager to obtain Wysocki's signature, he had never seen the document executed and that to his knowledge Wysocki never signed it and "it could very well have been unsigned." The company's general manager at the time, who negotiated the terms of Wysocki's employment, testified that Wysocki never executed the written agreement to reimburse and that its terms did not accurately reflect the true terms of Wysocki's employment.

The only testimony in support of the company's position that Wysocki had signed an agreement to reimburse was that of the company's administrative manager. She said she had seen Wysocki's signature on the original agreement but that it was now unavailable because someone had broken into her office and stolen it.

The jury could believe and apparently did believe that Wysocki never executed an agreement nor agreed to reimburse, that the company was aware of this, and that its refusal to pay Wysocki and demand reimbursement for the recruitment fee was in bad faith. The evidence was also sufficient for a jury to have found that the company was stubbornly litigious and caused the plaintiff unnecessary trouble and expense in collecting what was owed to him.

OCGA § 9-11-50 provides that: "If there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." "Evidence that strongly supports but does not demand a particular verdict does not warrant a directed verdict. [Cits.] The standard of appellate review of the trial court's denial of a motion for a directed verdict is the 'any evidence' standard. [Cit.] . . . The standard for granting or denying a judgment notwithstanding the verdict is the same as that for a directed verdict. [Cit.] Moreover, in considering a motion for judgment n.o.v., the trial court must view the evidence in the light most favorable to the party who has secured the jury verdict. [Cit.]" *United Fed. Savings &c. Assn. v. Connell*, 166 Ga. App. 329, 330-331 (1) (304 SE2d 131) (1983). If neither a directed verdict nor a judgment n.o.v. is warranted, surely a defendant is not entitled to a new trial. The grant or denial of a motion for new trial on general grounds is a matter within the sound

discretion of the trial court and will not be disturbed on appeal if there is "any evidence" to authorize it. *Kendrick v. Kendrick*, 218 Ga. 460 (1) (128 SE2d 496) (1962); see also *Hopkins v. Sicro*, 107 Ga. App. 691, 693 (2) (131 SE2d 243) (1963). Here, "[i]t was for jury determination as to whether or not there was a bona fide controversy so as to deny attorney fees. . . ." *Jackson v. Brinegar, Inc.*, 165 Ga. App. 432, 437 (2) (301 SE2d 493) (1983).

Thus, the court did not err in denying ASCO's motion for directed verdict or motion for judgment notwithstanding the verdict or for new trial on the issue of attorney fees.

2. Punitive damages. ASCO next asserts that Wysocki is not entitled to punitive damages because there was no evidence to support the award.

Punitive damages are recoverable in tort actions in certain circumstances. OCGA § 51-12-5. They are authorized in cases involving fraud. *Champion v. Martin*, 124 Ga. App. 275, 277 (2) (183 SE2d 571) (1971). In addition to breach of contract, plaintiff alleged fraud. Both parties requested instructions to the jury on the subject. One of the five elements of fraud is that the plaintiff relied on the false representations of defendant. *Eckerd's Columbia, Inc. v. Moore*, 155 Ga. App. 4, 5 (1) (270 SE2d 249) (1980). There was no evidence that Wysocki relied on the representations concerning the alleged reimbursement agreement. Rather than relying on the representations, Wysocki disputed them as soon as they were made and maintained his position consistently thereafter. He never acted on them except in furtherance of his denial of their validity. Wysocki testified that he was not shown the alleged agreement until after he had already tendered his resignation. He refused to pay the $6,000, and he did not continue to work for ASCO until a year was completed so as to avoid the claimed obligation.

As the evidence reflects a complete absence of at least this element, we need go no further. Punitive damages are not supportable when the tort is not proved. "[T]here being no actionable fraud in the case, there is no basis for punitive damages on account of it." *Third World, Ltd. v. Brewmasters of Augusta*, 155 Ga. App. 352, 355 (2) (270 SE2d 891) (1980). Therefore, ASCO is entitled to a judgment n.o.v. as it relates to punitive damages. Since only this portion of the verdict fails as a matter of law, ASCO would not be entitled to a new trial but only to what was alternatively moved for.

Although ASCO adequately preserved the appealability of the jury instructions on punitive damages, see OCGA § 5-5-24 (a) and *Hurst v. J. P. Colley Contractors*, 167 Ga. App. 56, 57 (2) (306 SE2d 54) (1983), we need not discuss the subject further, given our ruling above.

3. Mutual departure. Lastly, ASCO asserts that the trial court

erred in "charging the jury as to 'mutual departure' from the terms of the original employment agreement since there was no evidence to support an allegation or charge as to mutual departure from the terms of the agreement." The instruction at issue is: "If you find that the parties mutually departed from the terms of their original employment agreement, neither party can insist upon the terms of the agreement without reasonable notice."

ASCO argues that since there was admittedly no evidence of notice to return to original terms before its insistence thereon, the jury was erroneously authorized to find for Wysocki based on a mutual departure from the terms of the employment agreement with respect to recruitment fee reimbursement. There was evidence of departure by way of the former general manager's testimony. He was the person who discussed terms of employment with Wysocki, and by deposition narrated and documented at trial that if reimbursement of the fee was discussed, it would have been on a pro-rata basis (assuming they had since agreed to full reimbursement) before pro-rata basis would control. If that was the agreement, the departure was the insistence that it be full reimbursement and the notice would have to be that the parties were returning to the pro-rata basis. If the agreement was full reimbursement, as ASCO contended, then the departure would be the pro-rata basis or zero reimbursement and, absent notice of return to full reimbursement, the departure would prevail. If the original agreement was no reimbursement and the parties thereafter mutually agreed to full or pro-rata reimbursement, then without notice of return to the original, the later agreement would be enforceable. Since the verdict demonstrates that the jury found there was *no* agreement ever as to reimbursement for recruitment fee, whether there was a mutual departure from it became a moot question. Therefore the instruction, if it was erroneous, was harmless as it could not have affected the verdict.

The appellee's motion for 10% additional damages pursuant to OCGA § 5-6-6 contained in the body of his brief, although it should have been separately stated, is nevertheless denied.

*Judgment affirmed in part and reversed in part. Deen, P. J., and Pope, J., concur.*

DECIDED OCTOBER 30, 1985 —
REHEARING DENIED DECEMBER 3, 1985.

*L. Brown Bivens*, for appellant.
*E. Kendrick Smith*, for appellee.