## 75104. COOPER et al. v. RE/MAX NORTH ATLANTA, INC.
### (366 SE2d 328)

BEASLEY, Judge.

The pertinent facts are not in dispute in this conflict surrounding nonpayment of a real estate commission.

Cooper is an engineer and licensed real estate broker involved in design, construction, and real estate development. He was president, sole director, and shareholder of at least ninety percent of the stock of Sentry Engineering & Construction Company, Inc., when Cooper and Sentry purchased two adjoining tracts of property from Mercer University in October 1981. Sentry developed a portion of the property into Regent Centre Office Park (Regent Centre) in 1982 and completed Phases I and II. Late in 1982, plans were submitted to the DeKalb County Development Department for a project called Regent Centre Office Park, Phase III. The building was to take place on a site adjoining Phase I but on property known as 3020 Mercer University Drive and owned by Cooper.

On December 20 Sentry, represented by Cooper, agreed with Specialty Appliance Works, Inc. for the latter to lease space at Regent Centre, known as 3070 Mercer University Drive, for a term of thirty-six months commencing on February 1, 1983. Special stipulations in the lease provided: if the tenant was then not in default of the lease, the landlord agreed to furnish the tenant with a larger space at any time after the midpoint of the lease term upon ninety days written notification of the tenant's need to expand; the term of the lease would be increased to thirty-six months from the time the tenant moved into the larger space; the tenant would have the option to purchase the premises for a period not to exceed three years from January 31, 1983, at terms of payment; if the tenant purchased the leased premises, or any part thereof, or *any other space in Regent Centre*, during the initial or extended term of the lease, then the landlord agreed to pay, upon the closing of the sale, a real estate commission equal to eight percent (8%) of the total sales price less eight percent (8%) of the total unpaid rent that would have been due under the terms of the lease had a sale not occurred. The landlord was to pay 50 percent of all commissions to McGinnis Realty, Inc. and the remainder of all commissions to Re/Max North Atlanta, Inc.

Cooper formed a new corporation in 1983, Regent Centre Development Company, Inc. (RCDC), of which he was president, sole director, and sole shareholder. In July Cooper, as seller, agreed with Specialty and Moneytree Investors Corporation, as purchasers, for the sale and purchase of the land at 3020 Mercer University Drive at a price of $585,000. The contract provided that prior to closing the seller would construct on the property a two-story, 6,000-foot office building commensurate with the construction at the adjoining Regent

Centre Office Park and further depicted by plans attached.

On November 29, Cooper procured in his own name a construction loan on the property. The next day he transferred and assigned to RCDC all of his rights, title, and interest under the sales contract with Moneytree and Specialty and granted a warranty deed on the property to RCDC subject to the construction loan. On June 12, 1984, after construction of the office building, Cooper quit-claimed the property to Specialty and Moneytree. No real estate commission was paid on the sale. On November 21, Moneytree granted its interest in the property to Specialty.

Re/Max North Atlanta, Inc. filed suit against Cooper individually, RCDC, Sentry, and Specialty. Count one alleged that Sentry was indebted to plaintiff for the real estate commission in the amount of $23,400 plus interest from June 12, 1984, the date of sale of the property, and was also liable for $8,000 as attorney fees and expenses of litigation for bad faith, stubborn litigiousness, and unnecessary trouble and expense. Count two alleged that defendants individually and through Cooper intentionally and falsely represented that plaintiff would be paid the real estate commission; that plaintiff relied on Cooper's representations and submitted a tenant resulting in the lease; that Cooper, aided and abetted by the corporate defendants and with the intent to defraud Re/Max and avoid payment of the commission, arranged for the sale of the new building to Specialty through a new and different entity, RCDC; that Cooper at all times material was the principal owner and controlled and acted as president of Sentry and RCDC and that he individually and through the corporations owned, developed and controlled the real estate leased to Specialty and the real estate then sold to it, all of such real estate being known generally as Regent Centre; and that the transfer and sale of the property by Cooper and RCDC to Specialty was arranged intentionally for the express purpose of defrauding Re/Max and avoiding payment of its commission. In this count, Re/Max asked for the amount of commission claimed in count one and $100,000 as punitive damages from the defendants jointly and severally, a reasonable sum as expenses of litigation and attorney fees, and all court costs. Re/Max later voluntarily dismissed without prejudice its complaint against Specialty.

The jury returned a verdict for Re/Max on count two in the principal amount of $10,246.50, plus expenses of litigation including $3,750 attorney fees, and $5,000 punitive damages. The trial court entered judgment thereon against Cooper, RCDC, and Sentry, and they appeal.

1. Appellants urge that the trial court erred in failing to direct a verdict in their favor because a) plaintiff failed to prove fraud as a matter of law, b) the verdict is not supported in law or fact as the

record does not contain evidence that the property sale was in violation of the lease, and c) plaintiff failed to prove the occurrence of a condition precedent.

"A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced together with all reasonable deductions and inferences therefrom demands a particular verdict. OCGA § 9-11-50 (a); [Cit.]" *Beard v. Fender*, 179 Ga. App. 465 (346 SE2d 901) (1986). "The standard of appellate review of a trial court's denial of a motion for a directed verdict is the 'any evidence test.' [Cit.]" *Little v. Little*, 173 Ga. App. 116 (325 SE2d 624) (1984). The question thus presented us is whether or not there was any evidence of fraud, violation of the subject lease, and occurrence of the alleged condition precedent.

a) Fraud. Appellants contend that Re/Max failed to prove that any of them made any false representations to it so that Re/Max could not have relied on any false representation; that Re/Max failed to prove that any representations which may have been made were made with knowledge of their falsity or with an intent to deceive Re/Max, and that since the alleged misrepresentation by Sentry related to a future act it was not legally sufficient to support a claim for fraud. They contend further that with respect to Cooper and RCDC the element of false representation was not established, because the only misrepresentation Re/Max alleges was that contained in the lease agreement between Sentry and Specialty to the effect that Sentry would pay Re/Max and the other realtor a commission if Specialty purchased property within Regent Centre, and since neither Cooper nor RCDC were parties to the lease they could not be held responsible for any promises in it.

At trial Re/Max claimed that Cooper individually and Sentry acting through Cooper never had any intention of paying a sales commission, even at the time the representation of the possibility of a commission was made to Re/Max, and that in order to avoid paying a commission, Cooper formed RCDC and transferred any interest in the sales contract on the subject property and title to the property to RCDC. Re/Max elicited testimony from Cooper about the structure of his companies and the financial machinations surrounding the eventual sale of the property. From this, the jury could have accepted Re/Max' theory and reasonably inferred from Cooper's descriptions of the corporate entities and the transactions surrounding the development and sale of the land that there was never an intention on Cooper's part to pay the commission.

Actionable fraud can arise in the case of "promises as to future events made with the present intention not to perform, [cits.] or where 'the defendant knows the future event will not take place.' [Cit.]" *Georgia Real Estate Comm. v. James*, 152 Ga. App. 193, 195

(262 SE2d 531) (1979). Cooper's credibility was a significant factor in assessing whether or not the business transactions were part and parcel of the alleged fraud, and his credibility was a matter for the jury's determination. OCGA § 24-9-80. "The trior of fact in determining the worthiness of belief of a witness may take into consideration his appearance or his demeanor or his manner upon the stand. [Cit.]" *Mustang Transp. v. W. W. Lowe & Sons*, 123 Ga. App. 350, 352 (3) (181 SE2d 85) (1971). "Although fraud may not be presumed, 'slight circumstances may be sufficient to carry conviction of its existence.' [Cits.]" *Horne v. Claude Ray Ford Sales*, 162 Ga. App. 329 (1) (290 SE2d 497) (1982).

Could Cooper individually and RCDC be held accountable for fraud along with Sentry, even though Cooper signed the lease in his capacity as an officer of Sentry and RCDC was not a party to the lease or even in existence at the time of execution of the lease? They could, if the jury was authorized to find that the corporate veils were pierced because the corporations were the alter ego of Cooper. " 'The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party "has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility." [Cits.]' " *Jenkins v. Judith Sans Intl.*, 175 Ga. App. 171 (1) (332 SE2d 687) (1985). "The question of whether the corporate entity should be disregarded depends upon the particular circumstances of each case. [Cit.]" *Hogan v. Mayor &c. of Savannah*, 171 Ga. App. 671, 673 (3) (320 SE2d 555) (1984).

There was evidence upon which a jury could find that Cooper and his corporations used "assets and authority interchangeably," were "the same and fully exchangeable," *Harrell v. Bank of the South*, 174 Ga. App. 384 (330 SE2d 147) (1985). In fact that interchange or exchange was part of Re/Max's argument regarding Cooper's shifting of assets, the property, through a new corporation so as to avoid contractual obligations of another of his corporations. The court charged the jury regarding Re/Max's contentions that the two corporations were alter egos or business conduits and appropriately charged the legal theory whereby the jury could disregard the separate legal personalities of Cooper and his corporations. Once the jury found fraud, it was authorized under the evidence to hold all three defendants liable.

b) Property sale as a violation of the lease. Appellants assert that the sale of the property did not trigger the payment of the real estate commission under the lease because i) the property was not within Regent Centre and ii) the property was not sold or even owned by Sentry, the only party bound by the lease, so that conditions precedent to Sentry's obligation were not satisfied.

i) Whether or not the property was a part of Regent Centre was a fact for the jury to determine, and the evidence supported its finding. The property was adjacent to Phase I of Regent Centre. Numerous documents submitted to the DeKalb County Planning Department referred to the property as Phase III of Regent Centre Office Park. The building plans submitted to the county for building authorization were titled "Regent Centre Office Park, Phase III," named Sentry as developer, owner and contractor, and were signed and sealed by Cooper individually as an engineer. The same architect who designed Regent Centre designed the building, the same materials were used on the exterior of the building, and from the street the building appeared the same as the others in Regent Centre.

ii) The fact that Sentry was the party on the lease would not prevent the sale by RCDC from triggering the commission under the lease because, as we have ruled in Division 1 (a), the jury was authorized to find that the two corporate entities along with Cooper were interchangeable for the purposes of the transactions at issue.

c) Condition precedent. Appellants argue that Re/Max failed to prove the occurrence of a condition precedent to recovery in that the name of the tenant typed on the lease was "Specialty Appliances, Inc." rather than the correct "Specialty Appliance Works, Inc.," and that there was no evidence to explain the difference or to indicate that these two corporations were the same.

This was not at issue at trial. There was no testimony or evidence to the effect that two different corporate entities were involved, nor is such contention made by appellants now. Cooper himself testified that on behalf of Sentry he signed the lease with Specialty Appliance Works. Other testimony corroborated the fact that Specialty Appliance Works, Inc., was unquestionably the tenant under the lease with Sentry. Appellants' assertion is without merit.

2. Appellants also contend that the trial court's instructions on maliciousness and punitive damages were not supported by the record.

Defendants did not except in any manner to the court's charge and cannot complain. *Little v. Little*, 173 Ga. App. 116 (2) (325 SE2d 624) (1984). In any event, evidence of fraud allows for the imposition of such damages. *Associated Software &c. Organization v. Wysocki*, 177 Ga. App. 135, 138 (2) (338 SE2d 679) (1985).

*Judgment affirmed. McMurray, P. J., concurs. Sognier, J., concurs in the judgment only.*

DECIDED FEBRUARY 4, 1988 —
REHEARING DENIED FEBRUARY 26, 1988 —

*Richard C. Freeman III*, for appellants.

*Joe H. Bynum, Jr.,* for appellee.