## 76197. CAMPBELL et al. v. FORSYTH.
### (370 SE2d 207)

BIRDSONG, Chief Judge.

Plaintiffs, Joyce and Randy Campbell, appeal from a jury verdict in favor of defendant Debbie Forsyth, and judgment entered upon the verdict. Joyce Campbell was a passenger in an automobile driven by Janet Presley. Campbell and Presley were employees of the Cartersville Spinning Company and worked the 8:00 p.m. to 8:00 a.m. shift, and were going home at approximately 8:30 a.m. on April 17, 1986, after completing their shift. Presley was driving northward on Georgia Highway 113 and approached an intersection with County Road 37. Forsyth was proceeding westward on County Road 37 and stopped at the stop sign where it intersected with Highway 113. Forsyth said she thought the way was clear and pulled into the intersection, intending to turn south. Presley testified that she saw Forsyth's car stop, but when she got closer she saw that the front end of the car was in the right-hand lane of the road. She tried to go around Forsyth's car, but they collided. There was only a minor impact, according to Officer Edward Brock who investigated the collision. Presley said she was driving at approximately 45 miles per hour. The speed limit at that point was 55 mph. Officer Brock found no indication that either vehicle "tried to brake at all." The officer found there were no injuries to any of the individuals in the two cars. The right front quarter panel of Presley's vehicle was "marked up, indented." The right front bumper of Forsyth's vehicle was damaged. The damage to Presley's vehicle in which Campbell was riding, was characterized as "slight." Both cars were driven away from the scene of the collision.

Campbell said she was riding in the back seat of Presley's vehicle on the passenger side. She saw Mrs. Forsyth's car stop and then enter the highway. She said she told Presley to slow down and Presley's car "swerved over into the left lane. . . ." When Presley put on her brakes, Campbell said she hit her head on the top of the car and went into the front seat. She was not wearing her seatbelt. When questioned by the officer at the scene, she told him she was not injured. She also told the paramedics in the ambulance that she was not injured. "About two hours after [she] got home . . . [she] started having pains in [her] neck and pains between [her] shoulder blades." Her husband took her to the "emergency room" at the Rockmart Aragon Hospital. After being treated in the emergency room, she went to see Dr. John Atha. Dr. Atha put her in a neck brace and gave her some muscle relaxants and told her to go to bed. At a later date she saw Dr. Martensen about her "nerves" and was placed in the hospital. She testified that she returned to the Rockmart Aragon Hospital emergency room nine times for her nerves. She was referred to Dr. Mark Murphy, a neurosurgeon, for her nerves. She says she continues to

experience bad health problems to the present date and seeks damages for medical expenses, pain and suffering, and lost wages. The jury found for the defendant and plaintiffs bring this appeal. *Held*:

1. Appellant contends the trial court erred in denying her motion for directed verdict on the issue of Forsyth's liability. We do not agree. The trial court submitted all issues to the jury on the contentions of the parties. The jury was charged that plaintiff alleged injuries sustained by Campbell were caused by the negligence of Forsyth in failing to maintain a proper lookout for oncoming vehicles before entering Georgia Highway 113, that she failed to yield the right-of-way to Presley and attempted to drive across Highway 113 when such crossing could not be made with reasonable safety, and that because of these acts of negligence Campbell was injured, suffered great pain and discomfort and her ability to work and enjoy life has been "permanently diminished." The husband asked for damages for loss of consortium.

The jury was charged that the defendant contended the collision was an accident and that Campbell was not permanently disabled, but suffered only an acute soft tissue injury from which she will recover and should have fully recovered prior to this time. The court also charged that Campbell had recovered $5,000 no-fault insurance benefits and any verdict should be decreased by this amount.

Accordingly, the jury was presented with the issues of Campbell's allegation of negligence on the part of Forsyth, and Forsyth's allegation that if Campbell was injured it was minor, not permanent, and should have fully resolved itself prior to trial, which was on September 16, 1987, and the collision was April 17, 1986.

" 'On appeal, the evidence must be construed to uphold the jury's verdict, and the sole question for determination is whether there is any evidence to authorize the verdict. [Cits.]' *Gold Kist Peanuts v. Alberson*, 178 Ga. App. 253, 254 (342 SE2d 694)." *Knight v. Gonzalez*, 181 Ga. App. 468, 469 (352 SE2d 646).

Dr. Mark Murphy, a neurosurgeon who treated Campbell after her injury, testified in person and by deposition. He first saw Campbell on May 13, 1986, reviewed her X-rays, which were normal and conducted a neurological examination and found no evidence of any broken bones, slippage of bones, and no abnormal alignment of any bones. She complained of pain in the neck and shoulders and he checked the cranial nerves, head and neck, and all parts of the "musculoskeletal" system. He found "a little bit of tenderness if you pushed over the neck . . . just mild tenderness." Her reflexes and strength were normal. He found no neurologic damage, there was no asymmetry between her reflexes on either side and no signs of spinal cord damage. He discharged her from his care on June 25, 1986.

Dr. Murphy again saw Campbell on May 4, 1987. She had devel-

oped "some new characteristics. . . . One was that her back — that her neck and shoulder pain had resolved. . . . But that she had started having some central low back pain around October, sometime in 1986." He found no signs of any nerve root irritation in her back. Her neurological examination was "basically normal."

Dr. Murphy again saw Campbell on July 2, 1986. On this latter occasion she told him the back pain "had come on in March of 1987," but on May 4 she had told him it developed in October 1986. Dr. Murphy diagnosed Campbell's original complaint as a "cervical flexion extension injury" you usually find in car wrecks. This is a "soft tissue" injury and "usually resolves in a month or two." It was almost one year later that Campbell first complained of back pain. When this type injury does not improve after a couple of visits, he asks the patient if she is involved in litigation and Campbell informed him she was. The doctor explained that "you can fake pain . . . but you can't fake spasm in your back, you can't fake reflexes," and he did not see any "true responses" which would indicate an active spasm in her back or that she had a ruptured disc. Dr. Murphy was of the opinion that as to Campbell's problems "probably it was not related to her automobile accident. . . . Whether or not her automobile accident did cause her to have an initial neck and shoulder strain and that her underlying personality was such that she became anxious and depressed and this later led to back pain, that may well be the scenario." His assessment: "I suspect that once litigation is settled she will markedly improve."

Appellee also contends that Campbell was thoroughly impeached. Throughout this trial, conflicting testimony was given by the appellant.

The jury was aware that Campbell had collected $5,000 from insurance coverage for her injuries, and that she originally told people at the site of the collision that she was not injured, and that she had misstated some of the facts surrounding the collision, and had not worn her seatbelt to avoid injury in a collision which was described by the investigating officer as causing "slight" damage to the vehicle in which she was riding. Further, that such injuries as she incurred had been resolved and she had been discharged by her doctor, but that either four months, or nine months later she developed lower back pain, for which a neurologist could find no neurological basis.

As stated earlier, on appeal this court is required to construe the evidence to uphold the jury verdict, and if there is "any evidence" to authorize the verdict, we should affirm. *Knight*, supra at 469. This "any evidence" standard also applies to appellate review of the trial court's denial of appellant's motion for a directed verdict. *Associated Software Consultants v. Wysocki*, 177 Ga. App. 135 (1) (338 SE2d 679). Under our code, a directed verdict can be granted only "[i]f

there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. . . ." OCGA § 9-11-50 (a). In the instant case, appellant's action was bottomed on negligence of the appellee. And, it is elementary that before any negligence can be actionable it must be proven to be the proximate cause of the injuries of the complainant. *Rhodes v. Levitz Furn.*, 136 Ga. App. 514, 516 (221 SE2d 687). It is the general law of this state that questions of negligence, diligence, contributory negligence, and proximate cause are peculiarly issues for jury resolution, and a court should not remove the issue from the jury except in plain and indisputable cases. *Atlanta Coca-Cola Bottling Co. v. Jones*, 236 Ga. 448 (224 SE2d 25). On the evidence of record, reasonable men could have differed on whether the negligence of the appellee was the proximate cause of appellant's claimed permanent injuries. The evidence was neither plain nor palpable, nor was a verdict for appellant demanded. *Humble Oil &c. Co. v. Mitchell*, 230 Ga. 323, 326 (197 SE2d 126). It was not error for the trial court to refuse to direct a verdict for the appellant.

2. We find appellant's allegation that the judgment, based upon the jury's verdict, "is contrary to the evidence and the principles of justice and equity" to be without merit.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED JUNE 1, 1988.

*Joseph N. Anderson, Sara Nell Langland,* for appellants.
*Jack G. Slover, Jr., William D. Strickland, Steven P. Gilliam, Donald T. Hunt,* for appellee.