## A04A0469. BOUNDS v. COVENTRY GREEN HOMEOWNERS' ASSOCIATION, INC.

### (601 SE2d 440)

MIKELL, Judge.

Andrea Bounds, who owns property in a subdivision governed by restrictive covenants, appeals from an interlocutory injunction entered in favor of her homeowners' association, the Coventry Green Homeowners' Association, Inc. ("Association"), prohibiting her from making improvements to her property. Because the trial court erred in excluding evidence concerning the Association's alleged failure to comply with the covenants, we vacate and remand for proceedings consistent with this opinion.

The record shows that the homes and lots in the Coventry Green subdivision of Cobb County are governed by a Declaration of Covenants, Restrictions and Easements ("Declaration"). Section 5.06 states:

> No structure shall be commenced, erected . . . or permitted to remain on any Lot, nor shall any existing structure upon any Lot be altered in any way which materially changes the exterior appearances of the structure or Lot, unless plans and specifications therefor shall have [been] submitted to and approved in writing by the ACC [Architectural Control Committee].

Section 5.09, in turn, provides that "[t]he [ACC] shall take action on any plans and specifications submitted as herein provided within thirty (30) days after receipt thereof. . . . Failure by the ACC to take action within thirty (30) days of receipt of plans and specifications submitted for approval shall be deemed approval of such plans and specifications."

On November 12, 2002, Bounds notified the chairman of the ACC, John Valente, that she intended to proceed with some work on her property. Bounds submitted a hand-drawn sketch showing a turnaround, new driveway, retaining wall, and underground drainage. Prior to that date, Bounds already had excavated the dirt from her crawl space, piled it in a mound in the back yard, and laid a concrete floor in the crawl space. She planned to construct a two-car garage in the back of her home. Bounds, a nonpracticing attorney, testified that she did not seek prior approval from the ACC because she was not changing the exterior at that time, and the Declaration did not require ACC approval for interior projects.

On November 24, 2002, Valente and several other ACC members visited Bounds's home and met with her husband, Stephen. Valente, a practicing attorney, told Stephen Bounds that he was required to

obtain ACC's approval for the project. Valente followed up with a letter the following day requesting that the Boundses cease construction and provide the ACC with copies of county building permits and engineering plans detailing elements of the project. The letter stated that, as required by the Declaration, the ACC would issue a final decision on the construction proposal within 30 days.

The next day, November 26, 2002, counsel for the Association delivered a similar letter to the Boundses, invoking Section 5.06 and the requirements thereunder, including the submission of a site plan showing the location of proposed driveways, parking spacing, siltation and erosion control measures, a foundation plan, a floor plan, materials, color scheme, and landscaping and grading plans. The letter instructed the Boundses to cease and desist any construction work absent ACC approval.

The Boundses responded by letter dated November 28, 2002, stating that the foundation walls had been cut for the placement of a garage door, that permits had been obtained for that work, that the garage door openings would be framed to protect the structural integrity of the house, but that all other work would cease pending the ACC's decision. A permit was submitted with the letter. Counsel for the Association replied on December 3, 2002, stating that the handdrawn site plan and other information provided by Bounds were insufficient for consideration by the ACC, so that her request was denied. The letter informed Bounds that all of the modifications she planned, including the garage, new driveway and additional paving for the turnaround, required ACC approval prior to construction.

Contending that the Boundses refused to cease construction of the garage and driveway, the Association filed a complaint against them for injunctive relief and damages on December 4, 2002. Stephen Bounds was dismissed from the action because he is not an owner of record of the property. The Association moved for a temporary restraining order. By consent order entered on December 16, Bounds agreed to cease and desist all construction work for 45 days, except such work as was necessary to ensure the safety of the work areas.

A hearing was held on the Association's motion for a temporary restraining order on March 11, 2003. Valente testified at the hearing that on December 15, 2002, the ACC, the Association's Board, and Bounds's neighbors met with the Boundses in an attempt to settle the dispute. He also testified that the purpose of the meeting was to assist the Boundses in preparing an application in a proper form.[1] Valente

---

[1] Section 5.08 (c) of the Declaration obligates the ACC to make reasonable efforts to "assist and advise the applicant in order that an acceptable proposal may be prepared and submitted for approval."

testified that he told the Boundses that they needed to submit plans prepared by an engineer.

Bounds submitted plans, drawn by an engineer, to the ACC several days after the meeting. The plans were not approved. Bounds attempted to cross-examine Valente concerning the December 15 meeting, but the trial court ruled such questioning an impermissible attempt to elicit testimony concerning settlement negotiations.

Stephen Bounds testified that cracks had developed in the foundation and the walls and that water was seeping into the cracks. He testified that he planned to seal the walls and to pour concrete for the sidewalk immediately. At the conclusion of the hearing, the court issued a temporary restraining order permitting Bounds to seal the basement but prohibiting her from pouring concrete or otherwise continuing any construction activity.

The order remained in effect until May 16, 2003, when a hearing was held on the Association's request for an interlocutory injunction. At the hearing, the Association's expert testified that Bounds's excavation of the dirt from the crawl space undermined the footings and made the foundation structurally unsound. While Bounds's expert agreed, he also testified that the construction had been stopped at the most vulnerable stage of the process and that the wisest course of action would be to move ahead as planned, including completing the driveway extension and turnaround. That expert indicated that the completed project would provide an impervious surface to prevent water from reaching the subgrade underlying the footings. As in the previous hearing, the trial court precluded defense counsel from cross-examining Valente concerning events that transpired after the Association filed suit. The trial court reiterated its ruling that any communications between the parties after the date the lawsuit was filed constituted inadmissible evidence of settlement negotiations. However, the court allowed defense counsel to make a proffer for the record. Counsel stated that he expected the evidence to show that Bounds submitted plans to Valente on December 20; that Valente did not respond verbally until February 2, when he telephoned Bounds; and that the Association did not formally respond in writing until February 20.

After considering the evidence presented at the hearing, the trial court found that Bounds had violated the Declaration by failing to obtain ACC approval prior to commencing work. The court issued an interlocutory injunction restraining Bounds from continuing any construction on her property without the permission of the ACC. However, the court permitted Bounds to make certain repairs outlined by the experts as necessary to maintain the structural integrity of the property. The court set the matter down for a final hearing on August 14, 2003. Dissatisfied with this order, Bounds filed the

present appeal, enumerating as error the trial court's exclusion of testimony relating to communications between the parties subsequent to the filing of suit.

1. First, we dispense with the Association's argument that Bounds's counsel failed to make a sufficient offer of proof regarding what the witnesses' testimony would have been, thereby failing to preserve any alleged error for appeal. The Association contends, inter alia, that Bounds's counsel "failed to ask a pertinent question on direct examination of Bounds or her husband." However, the record shows that counsel attempted to ask Bounds during direct examination whether she received a response to her proposal to the ACC. The court did not permit Bounds to answer. However, the court stated: "We'll make this a continuing objection for the record, so that your rights are preserved. I am not going to allow you to go into anything to do with settlement with this witness or with anybody else." Counsel replied that he was required to put into the record what he anticipated the testimony would be,[2] and the court permitted him to do so. Under these circumstances, we hold that Bounds made an adequate offer of proof.[3]

2. We next turn to the gravamen of Bounds's appeal; namely, that the trial court erred in determining that all communications between the parties which transpired after suit was filed were inadmissible. The Code section upon which the trial court relied, OCGA § 24-3-37, states, in pertinent part, that "admissions or propositions made with a view to a compromise are not proper evidence."

> The purpose of this Code section is to encourage settlements and protect parties who freely engage in negotiations directed toward resolution of lawsuits. It has been held applicable, however, only to admissions which are made as a concession to bring about a compromise or settlement and not to independent statements of fact by a party, even though made while the parties are trying to settle.[4]

In the case sub judice, there is evidence that the parties engaged in ongoing settlement negotiations. However, there is no evidence that the testimony which counsel sought to elicit on cross-examination and to introduce on direct examination formed a part of

---

[2] See *Cambron v. Canal Ins. Co.*, 246 Ga. 147, 152 (10) (269 SE2d 426) (1980).

[3] Compare *Wiley v. Luke*, 259 Ga. 861, 862 (1) (a) (389 SE2d 223) (1990), with *Hodge v. Lott*, 251 Ga. App. 288, 290-292 (2) (553 SE2d 652) (2001) (physical precedent only).

[4] (Citations and punctuation omitted.) *Dyer v. Investors Services*, 200 Ga. App. 634, 635-636 (1) (409 SE2d 249) (1991). See also *Allen v. Brackett*, 165 Ga. App. 415, 418 (1) (301 SE2d 486) (1983) (explaining distinction between a compromise offer and an offer to settle).

an admission or proposition made with a view to a compromise.[5] Rather, the excluded testimony related to facts, which, if proved, might establish that the Association failed to comply with Section 5.09 of the Declaration. In particular, the date and substance of the verbal discussion between Valente and Stephen Bounds, in which Valente allegedly conveyed disapproval of the Bounds's new plans, would be relevant to this issue. "[T]he statement of independent facts, even in a conversation in which a settlement was discussed, are not necessarily admissions made with a view to a compromise and therefore inadmissible."[6] We therefore hold that the trial court erred in excluding statements of fact made by the parties or their representatives after suit was filed. The breach of a restrictive covenant, whether by the homeowner or the homeowners' association, is a continuing one,[7] and the association is not relieved from the compliance with such covenants by the filing of suit against the homeowner. Indeed, "[c]ovenants running with the land must be strictly construed."[8] Therefore, the issue of whether the Association complied with Section 5.09 must be determined at a new hearing, upon the consideration of proper evidence.

*Judgment vacated and case remanded. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JUNE 23, 2004.

*McGee & Oxford, James J. Brissette*, for appellant.
*Weissman, Nowack, Curry & Wilco, David Y. Kwon, Derek W. Johanson*, for appellee.

---

[5] See *Graves v. Graves*, 252 Ga. 27, 28 (1) (310 SE2d 901) (1984).
[6] *Austin v. Long*, 5 Ga. App. 551, 552 (63 SE 640) (1909).
[7] See *Prime Bank v. Galler*, 263 Ga. 286, 288 (2) (430 SE2d 735) (1993).
[8] *Columbia Valley Recreation Center v. Massie*, 223 Ga. 151, 152 (1) (154 SE2d 215) (1967).