## MOSS *v.* MOSS.

No. 6994. JANUARY 16, 1930.

*P. Cooley, S. R. Jolly,* and *J. B. G. Logan,* for plaintiff in error.
*A. J. Griffin* and *Johnson & Adderholdt,* contra.

RUSSELL, C. J. Robert D. Moss and H. Baker Moss are brothers, sons of Fountain G. Moss, from whom they derived by inheritance lands in Banks County in this State. By inheritance and purchase they also acquired additional land upon the death of their mother. Robert D. Moss was several years older than H. Baker

Moss, and was appointed and served as guardian of his person and property until Baker's majority. They lived for a time in the same house after the death of their mother and until the marriage of Baker Moss. Later Robert D. Moss left Banks County, and, after staying a while in Florida and elsewhere, went to Groton, North Dakota, and resided there for several years. At the time he left the State he, jointly with Baker Moss, had leased his real estate to M. C. Scoggins for ten years from 1912 to 1921, inclusive. In accordance with the undisputed testimony of Scoggins, he paid the rental each year by checks payable to Robert D. and H. Baker Moss. In 1922, according to the testimony, Robert D. Moss appointed his older brother, John F. Moss, as his agent, and he paid the taxes and divided the products of the joint land between his brothers, remitting five thirty-seconds to Baker and the remainder to Robert. In 1923 a deed purporting to have been executed by Robert D. Moss to H. Baker Moss was put to record in the clerk's office of the superior court of Banks County. This was a voluntary deed on consideration of natural love and affection, conveying to Baker Moss the entire landed estate of Robert D. Moss, consisting of 275 acres of land, more or less, as described by the boundaries of adjoining landowners. Upon learning of the record of this deed Robert D. Moss returned to Banks County and filed the petition involved in this case, and asked that the deed to his brother Baker be canceled and declared to be null and void upon the ground that the deed had never been delivered by him to Baker Moss or to any one for him; alleging that the deed was without any consideration whatever, and setting up the fact that at the time of the execution of the paper both brothers were unmarried and each executed to the other similar deeds as to their respective lands, conveying title to whomever of the two should outlive the other; that these deeds were placed in escrow in the same sealed envelope in the Baldwin State Bank, and neither was to be delivered or to become effective until one or the other of the brothers should have died; that the deed had been obtained and had been recorded by H. Baker Moss; and that the deed from Baker Moss to the petitioner which accompanied it had been eloigned and destroyed, to the injury and damage of the petitioner and without his knowledge or consent. John F. Moss and Fountain G. Moss were made parties defendant to the action, but neither of them made defense. Upon the trial

the jury found in favor of the petitioner, and for cancellation of the deed as prayed. A motion for a new trial was made by the defendant, which was overruled, and he excepted.

1. Besides the usual general grounds, error is assigned in the motion for a new trial, because the court charged the jury as follows: "Now, gentlemen, the first question of law in this case is, was the deed made on March 29, 1909, was that executed and made and delivered? Now, in order for a deed to be valid it must have been delivered to the man who it was made to, and until it is delivered to the party to whom the deed is made it is not a deed. In other words, the statute says, to constitute a deed, a deed to land in this State must be in writing, signed by the maker, attested by at least two witnesses, and delivered to the purchaser, or some one for him, and be made on a valuable consideration. The consideration of a deed may be inquired into when the principles of justice require it. One of the elements necessary to constitute the validity of a deed is delivery of the deed, and until the deed is delivered it is not effective against the maker. Now, gentlemen, you take up that issue first, was the deed delivered? If it was executed and intentionally delivered to H. Baker Moss, and that was the intent at the time, why then that deed is good." It is alleged that the statement that "in order for a deed to be valid it must have been delivered to the man who it was made to, and until it is delivered to the party to whom the deed is made it is not a deed," and the words, "you take up that issue first, was the deed delivered? If it was executed and intentionally delivered to H. Baker Moss, and that was the intent at the time, why then that deed is good," were prejudicial to the movant, for the reason that it is "contended in this case that the deed in question was delivered to the Baldwin State Bank in a sealed envelope addressed to Robert D. Moss and H. Baker Moss, which in law amounted to a delivery; the court failing to charge the law of constructive delivery or the law of delivery to another for the grantee." We find no error in the instruction. The judge charged as to the constituents of a deed, in the very Code definition which requires that a deed must be "delivered to the purchaser or some one for him." Consequently there was nothing prejudicial in his telling the jury that one of the elements necessary to constitute the validity of the deed is delivery of the deed, and that until it is delivered the deed is not effective

against the maker; especially when the jury were told, in the same portion of the charge, that "if the deed was executed and intentionally delivered to H. Baker Moss, and that was the intent at the time, then the deed is good."

2. The assignment of error set up in the second special ground of the motion for a new trial is directed to the following excerpt from the charge of the court: "Now a deed in escrow is where one party makes a deed and turns it over to another party to be delivered upon certain conditions. Now the court charges you, as a matter of law, if this deed was made and delivered to the bank upon conditions between H. Baker Moss and Robert D. Moss, whether or not the bank understood that or not, if that was the agreement between the parties and it was to stay there, the fact that either one of them took out the deed and had it entered on the record in the clerk's office would not give it validity any more than before; but if it was given them and it was a straight deed of gift to H. Baker Moss, and there was no agreement that there was to be a joint deed in the consideration, if you find that to be the case, you would be authorized to find in favor of the defendant H. Baker Moss, provided you find there was a delivery." This instruction is assigned as error, "because the evidence did not authorize a charge on the law of escrow, there being no evidence of escrow;" because the words in said charge were prejudicial and harmful to defendant, and not a correct charge of the law of either escrow or delivery; and because, "the depositary being the agent of the grantor, the grantor is bound by his act, unless such act was contrary to the instructions of the said grantor, and it not appearing in the evidence that the depositary had any instructions, beyond the delivery of an envelope addressed 'Robert D. Moss and H. Baker Moss,' and there being no proof or allegation of fraud on the part of the grantee in obtaining possession of said deed."

In the form in which this exception is presented the gist of the alleged error is that the instruction is not adjusted to the evidence, and was without evidence to authorize it. As to the lack of allegation of fraud on the part of the grantee in obtaining possession of the deed, the petition plainly alleged that the conduct of Baker Moss in the entire transaction, including the procurement of the deed for the purpose of record, was a fraud. As to the proof not authorizing the instruction, the plaintiff, Robert D. Moss, swore

positively and unequivocally that there were in the envelope, at the time he left it with the Baldwin State Bank, two deeds, the one from himself to H. Baker Moss, and another from H. Baker Moss to him, conveying to him, should he outlive Baker, all the land owned by Baker, for the same consideration and upon the same terms as in the deed which he executed but retained in his own possession until deposited by him in the Baldwin State Bank upon the specific covenant and agreement that the envelope containing the deed was not to be withdrawn for any purpose from the custody of the bank until one of the respective grantors had died, when it should be delivered to the survivor. On the other hand, the defendant testified that while he executed a deed to his land to his brother, Robert D. Moss, of similar tenor and effect, he never did deliver it to his brother, and that it was not in the envelope which was delivered to the bank. He did not deny that he was aware of his brother's intention that the deeds should be mutual. He merely asserted that his brother's deed to him was a straightout gift. Nor did his testimony offer any explanation why, if the right on his part to complete delivery of the deed by getting it from the bank and having it recorded existed from the time of its execution, he waited from 1909 to 1923 to exercise this right. So we are of the opinion that the charge correctly stated to the jury, in substance, that if they believed the testimony of Robert D. Moss, the paper could properly be denominated as an escrow, while if they preferred the testimony of H. Baker Moss and that "there was no agreement that there was to be a joint deed in the consideration," they would be authorized to find in favor of the defendant.

3. The third ground alleges that "The court erred in charging the law of escrow, there being neither evidence nor pleadings that demanded a charge on the subject of escrow. Therefore the same was prejudicial, harmful, and hurtful to the cause of the movant." The petition, which was not demurred to, alleged that the petitioner deposited the deed with the Baldwin State Bank, to be held by it until the survivor of the two brothers should call for it after the death of the other. From what we have said as to the evidence, it is plain that this ground is without merit.

4. In the fourth ground it is alleged that the court erred in failing to charge the jury the law of constructive delivery of a

deed, for the reason that the evidence demanded such a charge, the testimony disclosing and the plaintiff admitting that the deed was placed in an envelope and addressed by the plaintiff to Robert D. Moss and H. Baker Moss and delivered to the cashier of the Baldwin State Bank without instructions. The court is not required, in the absence of an appropriate and timely request, to instruct the jury on every principle of law which may incidentally enter a case and amount to no more than an insignificant circumstance. The crucial question in the case is whether these brothers made to each other mutual deeds upon the sole consideration of natural love and affection, and whether there was a delivery of the deed on the part of each to the other, or a delivery made to the Baldwin State Bank in behalf of both, to become beneficial to whichever of the two might survive the other. If the testimony of the petitioner be true, since both parties are still in life, neither had the right to withdraw the deed of the other and by recording the deed create a presumption of delivery adverse to the rights of the other, and the obtaining of the deed and having it recorded in such circumstances would be a fraud which the law would not countenance. If the testimony of the defendant be true, and the plaintiff made him a deed of gift without any such accompaniment as a deed of like nature from the defendant to the plaintiff, which was delivered by the plaintiff to the defendant as testified by him, then the question of constructive delivery is nowise involved in this case. The defendant testified that he made no deed to his brother to which he ever called the attention of the latter, but that his brother executed the deed in question to him, delivered it to him, and put it in his manual possession, and he read it and without any request from his brother handed it back to him, for purposes, if any, not disclosed by the testimony of the witness. In this view of the case it certainly can not be held that the failure to charge the jury on the subject of constructive delivery of a deed is such an error as ought to require the grant of a new trial in this case.

5. In the fifth ground complaint is made that the "court erred in failing to charge the jury the law of the presumption of the deed having been delivered, and the evidence and pleading disclosing that the defendant was in possession of the deed and that the same had been recorded in the office of the clerk of the superior court for Banks County, Georgia, the presumption under the law

being that the deed was delivered, unless and until that presumption had been rebutted." For the reasons already stated, and there having been no request that the court instruct the jury as to the matter presented by this ground, we are of the opinion that the exception is without merit.

6. Exception is taken to the following excerpt from the charge of the court: "Now, gentlemen, you take this case under the rules, and you come to the conclusion, first, whether or not there was a delivery of the deed, or whether or not it was to be a joint deed. And if the deed was delivered, and it was the intention on the part of Robert D. Moss to deliver the deed over to H. Baker Moss, you find in favor of H. Baker Moss. On the other hand, if you find there was no intention of delivery, but it was taken from the bank vault contrary to the agreement, then you find in favor of the plaintiff." It is alleged that said charge was "prejudicial, unwarranted under the evidence, and harmful to the defendant." We are of the opinion that this instruction, in connection with the preceding portions of the charge, very clearly presented to the jury the controlling issue in the case. It was based upon the evidence in behalf of the respective parties, and was such a statement of the concrete facts, without prejudice to either party, as would enable the jury to clearly understand the paramount issue in the case.

7. The verdict was authorized by the evidence. A careful reading of the record discloses that the jury would have been authorized to find a verdict in favor of the defendant, instead of one in favor of the plaintiff. Various facts appearing in the record are adverted to by learned counsel for the plaintiff in error, and urged as reasons why a new trial should have been granted. Much stress is laid upon the fact that there is testimony of "worthy" witnesses as to admissions made by the petitioner to the effect that he had given his lands to his brother years before his departure to the west, and other similar circumstances. These matters might have influenced the jury to find a verdict different from that returned. But it is beyond the province of this court to set aside the finding of a jury upon issues of fact, where there is absolute conflict in the evidence in behalf of each. They are addressed to and may be considered by the trial judge in his review upon the hearing of the motion for a new trial; but in a case in which a verdict might have been rendered by the jury in favor of either party, when the

finding returned is approved by the judge, who saw and heard the witnesses, this court will not interfere with the exercise of his discretion in overruling the motion for a new trial.

> *Judgment affirmed.  All the Justices concur.*