## 30036. SMITH v. SMITH.

INGRAM, Justice.

Plaintiff, H. G. Smith, Sr., filed a complaint in the Superior Court of Floyd County against his son, H. G. Smith, Jr., in March, 1974, seeking cancellation of an option and warranty deed and alleging that his son obtained the option to buy the father's farm and the warranty deed conveying the farm "by exerting a predominate and undue influence and fraud on plaintiff." In particular, the father alleged that the son fraudulently represented that the option and the deed were to be used

solely for the purpose of establishing a value on his property for estate tax purposes and would not convey to the son any interest in the property. No pre-trial order outlining the issues for the jury was entered in the case. On October 2 and 3, 1974, the case was tried before a jury and a verdict was returned for the defendant.

On March 4, 1975, the father filed a motion for leave to amend his complaint in order to conform the pleadings to the evidence adduced at the trial. By means of the proposed post-judgment amendment, the father sought to add a second count to his complaint, claiming that the delivery of the option and deed to the son was not legally sufficient because the father lacked the requisite intent to surrender dominion of the property to the son. The father alleged that at the time the documents were executed, the son had agreed to hold the instruments as his agent until the father made a final decision whether any interest in the property would be conveyed to the son and, if so, whether by the option or the deed; and, that he, the father, never decided to convey the property to his son. The trial court denied the father's motion for leave to amend his complaint after judgment. The father appeals from the adverse rulings of the trial court.

Four errors are enumerated in this appeal: (1) the failure of the trial court to give in charge the father's request to charge no. 7: "I charge you that the question of completed and effectual delivery of a deed or option is one of intent of the grantor, and this intent to irretrievably part with control of the deed is to be gathered from the circumstances under which the delivery is made. The true test of delivery of a deed of conveyance is whether or not the grantor intended to reserve to himself an opportunity for changing his mind; an opportunity to undo what one has done . . . a chance to withdraw from a contemplated bargain or contract before it results in a definite contractual liability. What is delivery depends not only on act but also on intent. It requires more than a physical passing from the hands of the grantor to the grantee; an intention to surrender dominion must be present. *Morris v. Johnson,* 219 Ga. 81, 89-90 (132 SE2d 45) [1963]"; (2) the overruling of the father's motion for a directed verdict; (3) the denial of the father's motion for leave to amend his

complaint; and, (4) the denial of the father's motions for judgment n.o.v. and for a new trial. This court has considered each of these enumerations of error and concludes the judgment of the trial court should be affirmed.

The evidence relevant to the issues to be decided on appeal is as follows: In December, 1972, the son, who was residing in Maryland, visited his 83-year-old father in Rome, Georgia. At that time, according to the son's testimony, his father told him, as he had done earlier in the year, that he would like to convey his farm to the son because the son was the only child who showed an interest in the farm. The son contacted his father's attorney and requested the attorney to draw up an option, a warranty deed and a security deed conveying the farm. Both the attorney and the son testified that the reason for preparing both an option and a warranty deed was that the father and the son had not yet decided how they would arrange for the transfer of the land. A few days after the documents were prepared the father and the son executed all three instruments. The father, however, testified that his son had represented to him that the instruments were to be used only to set a value on the farm for estate tax purposes and not for the purpose of conveying title.

The son then returned to his home in Maryland in order to sell his business which was located there. The business was sold during the summer of 1973, and the son moved to the Georgia farm.

Shortly after the instruments had been executed, relations between the father and son became strained. The son testified that on several occasions he requested his father to decide whether he should record the option or the warranty deed, but his father would not come to a decision. Finally, in January, 1974, the father requested the son to leave the farm. The son refused, and in February, 1974, he recorded the option and the warranty deed. The warranty deed recited a consideration of $150,000; the option recited a consideration of $1,000 which would apply to the purchase price of $150,000; and the security deed recited that it secured an indebtedness of $149,000.

Other evidence introduced at trial included bank

records and canceled checks showing that the son had given his father a $1,000 down payment on the farm in December, 1972, and that the son had made additional payments on the farm during 1973, totaling approximately $7,000. There was also evidence that the father had sent the deed to secure debt to his attorney in February, 1973, for recordation. The security deed was never recorded, however, because the father failed to pay the intangible taxes due on the transaction.

All four of the father's enumerated errors deal with his basic contention that the issue of his intent to surrender dominion of the property, although not raised by the pleadings, was raised by the evidence and was tried by the implied consent of the parties pursuant to Code Ann. § 81A-115 (b). The relevant portion of that statute provides: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."

The son argues that the issue of intent was not tried by implied consent and that the evidence, upon which the father relies to raise the "intent to surrender dominion" issue, was introduced on the issue of fraud made by the original complaint.

"When the evidence that is claimed to show that an issue was tried by consent is relevant to an issue already in the case, as well as to the one that is the subject matter of the amendment, and there was no indication at trial that the party who introduced the evidence was seeking to raise a new issue, the pleadings will not be deemed amended under the first portion of Rule 15 (b). The reasoning behind this view is sound since if evidence is introduced to support basic issues that already have been pleaded, the opposing party may not be conscious of its relevance to issues not raised by the pleadings unless that fact is specifically brought to his attention." Wright & Miller, Federal Practice and Procedure: Civil § 1493, p.

466. Accord, 3 Moore's Federal Practice, § 15.13[2], p. 992. See Bettes v. Stonewall Ins. Co., 480 F2d 92, 94 (5th Cir. 1973); Wirtz v. Savannah Bank &c. Co., 362 F2d 857, 861 (5th Cir. 1966).

Whether an issue has been tried by the implied consent of the parties is a question of fact and a decision on this question is generally considered to be within the sound discretion of the trial court. Wright & Miller, supra, p. 469. In the instant case, however, the trial court did not make a specific finding that the issue of the father's intent was not tried by the implied consent of the parties. Thus, we have reviewed the evidence to determine if a trial of this issue occurred in the trial court.

The evidence of the father's indecision regarding the use of the option versus the warranty deed and the evidence of the long delay in recording the instruments clearly were relevant to the issue of whether the father intended to surrender dominion of the farm. However, this same evidence was also relevant to the son's defense to the original fraud claim. It tends to support the son's testimony that his father knew the character of the transaction and was not laboring under the impression that the documents would be used only to set a value for estate tax purposes on the farm. Furthermore, by explaining the long delay in filing the documents, the evidence tended to negate any inference of fraud which might arise from the fact of the delay.

Consequently, it was incumbent upon the father to put the son on notice prior to the close of the evidence of the father's contention that this additional issue was being placed before the jury for resolution. In only two instances, both occurring during the presentation of the father's evidence, could the son arguably have been placed on notice that this new issue was being injected into the case by the father as a basis for recovery.

At one point, the father's attorney called the son as a witness for the purpose of cross examination and the following question was posed to the son: "Q. So, in effect, when the papers were signed by your father, there was no intention, at that time, that the title to the property be transferred? A. My father said I could use either one [option or warranty deed] I wanted. Q. All right. Let's pass

that, and let me ask you this question . . ."

Later, during further cross examination of the son, a question arose concerning the admissibility of a certain letter which the son had written to his father. The father's attorney sought to use the letter to impeach the son's testimony that he had never advised his father regarding estate taxes. The father's lawyer stated to the court, "these contradictions, I might add, Your Honor, pertain not only to the question of estate taxes, but also as to the question of intent so far as transferring title."

Both of these statements, however, must be viewed in the context in which they were made. In both instances, the matter under discussion was whether the father intended to convey the farm when he executed the documents or whether he merely intended to set a value on his farm for estate tax purposes. Thus, it would have been reasonable for defense counsel to assume that the matter of the father's intent related only to the allegation of fraud against the son. This conclusion is supported by the fact that at the conclusion of the father's case, the defendant son made a motion for a directed verdict on the sole ground that the father had not made out a case of fraud for the jury. At that time there was no mention of the additional issue, which the father now contends was in the case, by either of the parties or the trial judge.

In these circumstances, we do not believe the issue of the father's intent to surrender dominion of the farm was squarely recognized as an issue in the trial by the parties and litigated in the case. The father could have made this additional issue known to the son prior to the close of the evidence but he did not do so.

We hold the trial court did not err in failing to submit this issue to the jury as it was not tried by the implied consent of the parties under the evidence in the case. Consequently, it was not error to refuse the father's requested charge no. 7 or to disallow the post-judgment amendment tendered on behalf of the father. In addition, we hold it was not error to overrule the father's motion for a directed verdict or the motion for judgment n.o.v. as there was a conflict in the evidence requiring a jury verdict. See *Brumby v. Brooks,* 234 Ga. 376, 381 (216 SE2d 288). There is sufficient evidence to authorize the jury's

verdict and therefore a new trial is not authorized. *Moss v. Moss,* 169 Ga. 734 (151 SE 506). Having found no merit in the enumerations of error, we affirm the trial court.
*Judgment affirmed. All the Justices concur.*

ARGUED JUNE 10, 1975 — DECIDED SEPTEMBER 12, 1975.

*Wright, Walther & Morgan, Robert G. Walther, William A. Zorn,* for appellant.
*C. Ronald Patton,* for appellee.