## 72474. BANK SOUTH, N.A. v. HARRELL.
### (351 SE2d 263)

BEASLEY, Judge.

This is the second appearance of this case. See *Harrell v. Bank South, N.A.*, 174 Ga. App. 384 (330 SE2d 147) (1985). Now, after retrial, the bank appeals the verdict for $5,200 special damages (the face amount of the check), $2,000 general damages, $5,000 punitive damages, and attorney fees.

The saga began with the opening of a checking account in 1980 at the South DeKalb branch of Fulton National Bank (now Bank South, N.A.) in the name "H & B Motors," a used car lot operated by Caroll Harrell's then husband. The account was opened on a commercial account form, different in several respects from a personal account form, and it was numbered as a commercial account. Neither of the blocks on the form indicating whether the depositor was a partnership or a sole proprietorship was checked. Appellee and her husband were authorized signatories on the account and only one signature was required for withdrawal. The signature line for acceptance of the account terms by the depositor remained in blank.

In February 1983 the Harrells' divorce action commenced, culminating in an eight-day trial. One of the items involved was a Corvette for which Mr. Harrell paid $5,200 and which appellee claimed she then financed. There is no evidence in this record which indicates the resolution of this matter in the divorce or which shows any relationship between the business of H & B Motors and the Corvette.

A month after Caroll Harrell filed the divorce petition, Mr. Harrell went to the South DeKalb branch and removed his wife's name as a signatory of the H & B Motors account. Some time prior to March 31, 1983, the bank had Mr. Harrell bring in a copy of his State Board of Used Car Dealers license, which reflected "H & B MOTORS . . . JERRY HARRELL (IND.)" Mr. Harrell testified that he operated the business as a sole proprietorship. Caroll Harrell acknowledged that the retailing and wholesaling of cars was a sole proprietorship, but she contended that "[a]s far as the tradename account that was opened, I was an operating partner of that account."

Caroll Harrell had been employed by the bank for ten years, until 1978, as a loan clerk and assistant cashier, and she was familiar with banking procedures. On March 23, she went to her bank, Bank South, Clayton, then a subsidiary of appellant, where she wrote and tried to cash a counter check for $5,200 on the H & B Motor account (no longer having access to H & B Motor's printed checks) to reimburse herself for the Corvette. The bank officer at her bank told her that, while there were sufficient funds in the account, she was no longer authorized to sign on the account and he could not approve the check.

The next day Caroll Harrell obtained another counter check and

deposited it in her personal checking account at the Clayton bank. The check cleared, causing Mr. Harrell to inquire when one of the H & B Motors checks was dishonored for insufficient funds. An officer looked into the matter and found the revised signature card and the State Board of Used Car Dealers license for H & B Motors. Based on these two documents, appellant on March 31 reversed the $5,200 entry by debiting Caroll Harrell's Clayton account.

The gravamen of Caroll Harrell's complaint was that Bank South, N.A. had deleted her name as an authorized signatory of the H & B Motors account and, as a result, refused to honor the counter check which she signed. Her complaint originally contained, in addition to the refusal to honor claim, only an attorney fee demand and a paragraph alleging bad faith and demanding punitive damages.

The only evidence at trial of damages was Caroll Harrell's testimony concerning the face amount of the check which had been dishonored and her attorney fees. After the close of the evidence, she amended her complaint to "conform to the evidence" by adding a prayer for general damages.

The bank objected and, in addition, moved for directed verdict on the grounds that the account was not, as a matter of law, a multiple party account; that even if it were, Caroll Harrell was not acting for a business purpose in writing the check, and that punitive damages were not recoverable in this breach of contract action.

1. The linchpin of the plaintiff's theory and the jury instructions was that the account was a joint account. If this had been true, the bank could not have removed her from the account except with her permission or by closing the account and reopening it under different terms. OCGA § 7-1-814.

Overlooked, however, was the plain wording of OCGA § 7-1-810 (5): " 'Multiple party account' means any of the following types of account: (A) A joint account; . . . It does not include accounts established for deposit of funds of a partnership, joint venture, or other association for business purposes; . . ."

Caroll Harrell acknowledged that the account was a commercial account and that she was aware that the bank would not allow this type account to be set up on the personal account "joint" form. Her contention was that, despite Mr. Harrell's position that the account was a sole proprietorship account, they were partners in the account. Even if they were, the statute precludes such from being a multiple party account and the trial court's instructions on joint tenancy were error.

Since the account was not a multiple-party account, the bank was authorized to accept direction from the "customer" in whose name the account was opened. See OCGA § 7-1-353 (a) (1). Since the evidence shows that the check cleared the account, although Mr. Harrell

had directed the bank to remove Caroll Harrell's authorization from the account on March 7, the next question is whether the bank was correct in taking the actions reflected in the record before reversing the transaction.

No one had marked the signature card to indicate whether H & B Motors was a sole proprietorship or partnership when the commercial account was opened. When the bank was faced with the question of control both Caroll Harrell and Mr. Harrell were requested to bring in documentation bearing on whether the depositor H & B Motors was an individual or a partnership. Obviously, absent status as a depositor which would give her rights pursuant to the contract reflected on the signature card, Caroll Harrell would have none against the bank. See *West v. Fed. Deposit Ins. Corp.*, 149 Ga. App. 342, 345 (2 A) (254 SE2d 392) (1979), aff'd 244 Ga. 396.

Mr. Harrell brought in his license from the State Board of Registration of Used Car Dealers, which reflected that he had registered with that Board as an individual. It is unlawful to operate a used car lot without so registering. OCGA § 43-47-7.

While as a matter of law the H & B Motors account was not a multiple-party account, one of the bank's witnesses testified that if the single party account were a partnership, none of the partners would be removed without their consent. Since Caroll did testify, although equivocally, that she was a partner in the account, this factual issue and the reasonableness of the bank's reliance on the used car dealer's license in resolving this conflict is a question for the jury under proper instruction. See *Trust Co. of Ga. Bank of Savannah v. Port Terminal &c. Co.*, 153 Ga. App. 735 (1) (266 SE2d 254) (1980); *National Bank of Ga. v. Refrigerated Transport Co.*, 147 Ga. App. 240 (II) (248 SE2d 496) (1978).

2. The bank enumerates as error the trial court's refusal to direct a verdict on punitive and general damages. It also urges that the allowance of an amendment to the complaint to add her prayer for general damages after the close of the evidence was error.

Before amendment the complaint contained only prayers for the $5,200 in special damages and for punitive damages, both of which are specific types of tort damages. OCGA §§ 51-12-2 (b) and 51-12-5. Amendments to conform to the evidence are allowed where there has been a trial of the issue by either express or implied consent of the parties and evidence concerning the issue has been admitted. OCGA § 9-11-15 (b). Here there was no evidence of damage to the appellee other than her claim to the face amount of the check, and she expressly disavowed any other damage except with regard to her attorney fees, for which she had prayed. Further, the bank objected to the injection of general damages after the close of the evidence. Allowing the amendment was error. *Preferred Risk Ins. Co. v. Boykin*, 174 Ga.

App. 269 (7) (329 SE2d 900) (1985), cert. denied, 254 Ga. 349.

Although plaintiff during oral argument alluded to several tort theories which would support the award of punitive damages, we will not consider any theory other than that upon which the case was tried. *Smith v. Smith*, 235 Ga. 109 (218 SE2d 843) (1975).

While there are situations where misfeasance in the performance of a contract may support a tort action, see *Long v. Jim Letts Olds, Inc.*, 135 Ga. App. 293 (217 SE2d 602) (1975), exemplary damages are not generally allowed in breach of contract cases. OCGA § 13-6-10. The most that was alleged and proven in the present case was a breach of the contract between the bank and Caroll Harrell. Other than the signature card, there was no allegation or proof of any duty owed to her or of any breach of an obligation. As we stated in a situation where a bank foreclosed on a note and security deed and was then sued for negligence by the customer: "Though the trial court found a noncontractual duty between the bank and [customer] we can find no support for that conclusion. So far as the record reflects, the only relationship between [customer] and the bank was that which arose out of the note and security deed. In order to maintain an action ex delicto because of a breach of duty growing out of a contractual relationship, the breach must be shown to have been a breach of duty imposed by law and not merely the breach of a duty imposed by the contract itself, *Mauldin v. Sheffer*, 113 Ga. App. 874, 878 (150 SE2d 150) [1966]. If there is no liability except that arising out of a breach of the express terms of the contract, the action must be in contract, and an action in tort cannot be maintained." *Commercial Bank & Trust Co. v. Buford*, 145 Ga. App. 213, 214 (243 SE2d 637) (1978). See also *Jones v. Brooks*, 174 Ga. App. 12 (2) (329 SE2d 300) (1985); *Spurlock v. Commercial Banking Co.*, 138 Ga. App. 892 (III) (227 SE2d 790), aff'd 238 Ga. 123 (1976).

On the complaint and the proof submitted, the trial court should have directed a verdict concerning the punitive damages claim. OCGA § 9-11-50.

3. The jury awarded attorney fees. Former OCGA § 13-6-11, in effect at the time, provided that expenses of litigation were recoverable under three circumstances, two of which were pled: bad faith, stubborn litigiousness.

The statute required that the bad faith be in the making of the contract at issue, but the record is totally devoid of any such evidence. Stubborn litigiousness refers to situations where a defendant forces suit where no "bona fide controversy" exists. *Jeff Goolsby Homes Corp. v. Smith*, 168 Ga. App. 218 (2) (308 SE2d 564) (1983). Where, as here, there is as a matter of law a reasonable defense (see Division 1), attorney fees are not recoverable. *White Repair &c. Co. v. Daniel*, 171 Ga. App. 501 (3) (320 SE2d 205) (1984); *Ken-Mar Constr.*

*Co. v. Bowen*, 245 Ga. 676, 677 (266 SE2d 796) (1980). Thus it was error for the trial court to deny appellant's motion for directed verdict on the issue of attorney fees.

*Judgment reversed with direction to the trial court to enter judgment for appellant on the punitive damages, general damages, and attorney fee claims. Benham, J., concurs. Deen, P. J., concurs in the judgment only.*

DECIDED NOVEMBER 26, 1986.

*Thomas C. Harney, Mara McRae*, for appellant.
*E. T. Hendon, Jr.*, for appellee.