75863. EBCO GENERAL AGENCY et al. v. MITCHELL.
(368 SE2d 782)

BEASLEY, Judge.

Mitchell signed an application for automobile insurance with appellants' agent on June 10, 1986. The premium quoted and shown on the application was $674, and Mitchell paid $213. When he remitted his first monthly payment of $64.75 on July 10, he was told that the policy was coming, but he was notified by letter of July 28 that his policy had been rated "slightly higher" and requested to send an additional $51. Mitchell subsequently learned that the premium originally quoted had been erroneously computed by the agent. The correct annual premium was $883 with monthly payments of $86.07. Mitchell requested that the policy be cancelled, which was done effective August 25.

After asking for a refund of the amounts paid, Mitchell received a check for $82.86, which was the amount he had paid less the cost per diem at the originally quoted rate. Having calculated that he was due more, Mitchell discussed the matter with appellants' home office and their local agent, and on September 10 and October 3 wrote for an additional refund of $61.54. It was not until November 7 that appellants responded to explain the basis for the amount of rebate sent.

Suit was filed alleging conversion of money and asking punitive damages and attorney fees for bad faith litigation. At trial after appellants' motion for directed verdict was denied, a jury awarded Mitchell $61.54 plus $15,000 punitive damages and $3,000 attorney fees. This appeal was brought upon denial of appellants' motion for judgment notwithstanding the verdict.

1. While Mitchell asserts that appellants sought to profit from their mistake "by increasing the premium shown on the application, in delaying the cancellation of the policy, in attempting to hide the truth of the premium increase and in ignoring correspondence" from him, there is no record evidence to support this. Mitchell concedes that the application form, signed but not read by him, contained an

express proviso that "if the actual premiums that result from the issuance of the policy are other than indicated above, this agreement may be amended to reflect the actual premiums and I shall make an additional down payment, if required, within 10 days of being notified." When the rating error was discovered, Mitchell was accordingly advised that an additional $51 was required for his down payment and that the correct premium rate was $883, and these figures were not contested. Nor does he dispute that after he chose to cancel the policy rather than pay the additional correct rate, he was fully insured for 76 days with the requested coverage at the rate originally quoted until the cancellation became effective. Under the insurer's rules, procedures and rates manual, the application when signed and mailed became a binder until the policy was issued.

A binder is a contract for temporary insurance. OCGA § 33-24-33 (a). "Insurance is a matter of contract law and contract rules and interpretations will apply. [Cit.] A party to a contract who can read, must read or show a legal excuse for not doing so, and ordinarily if fraud is an excuse, it must be such fraud as would prevent the party from reading the contract. [Cit.] *Life Ins. Co. of Va. v. Conley*, 181 Ga. App. 152-153 (351 SE2d 498) (1986).

" 'In order to present a cause of action for conversion an act of dominion over the personal property of another inconsistent with his rights or by an unauthorized appropriation must be shown.' [Cits.]" *Alpert v. Wickes Cos.*, 182 Ga. App. 51, 53 (1) (354 SE2d 674) (1987). "In order to maintain an action ex delicto because of a breach of duty growing out of a contractual relationship, the breach must be shown to have been a breach of duty imposed by law and not merely the breach of a duty imposed by the contract itself. [Cit.]" *Bank South v. Harrell*, 181 Ga. App. 64, 67 (2) (351 SE2d 263) (1986). Whether appellants remitted to Mitchell all the refund he was entitled to was solely a question of contractual interpretation. Thus the trial court erroneously denied their motion for directed verdict on the conversion claim. *Braddy v. Morgan Oil Co.*, 183 Ga. App. 157 (3) (358 SE2d 305) (1987).

2. "It is well settled that a claim for punitive damages will not lie in cases arising on contracts. See OCGA § 13-6-10 . . . . Having reversed the tort recovery, we must accordingly also reverse the award of punitive damages." *Builders Transport v. Hall*, 183 Ga. App. 812, 816 (3) (360 SE2d 60) (1987). Accord *Assoc. Software &c. Organization v. Wysocki*, 177 Ga. App. 135 (2) (338 SE2d 679) (1985); *Bank South v. Harrell*, supra.

Likewise, the court should have directed a verdict in appellants' favor on the claim for attorney fees as an award of expenses of litigation under OCGA § 13-6-11. Bad faith damages are not recoverable where there exists a bona fide controversy, such as the amount of re-

fund due here. " 'Since there was no (other) evidence from which a jury could find that the contract was made in bad faith or that the (appellants) breached it as a result of some sinister motive, the award of [attorney fees] cannot be sustained on the basis of bad faith.' [Cit.]" *Calif. Fed. Sav. &c. Assn. v. Hudson*, 185 Ga. App. 384, 389 (7) (364 SE2d 582) (1987). Accord *Hightower v. Gen. Motors Corp.*, 175 Ga. App. 112 (2) (332 SE2d 336) (1985), aff'd 255 Ga. 349 (338 SE2d 426) (1986). "Where, as here, there is as a matter of law a reasonable defense (see Division 1), attorney fees are not recoverable. [Cits.]" *Bank South v. Harrell*, supra at 67.

*Judgment reversed. Birdsong, C. J., and Banke, P. J., concur.*

DECIDED APRIL 5, 1988 —
REHEARING DENIED APRIL 20, 1988 —

*Mark R. Youmans*, for appellants.
*Kenneth M. Henson*, for appellee.