A89A1776. WMH, INC. et al. v. THOMAS et al.
(392 SE2d 539)

POPE, Judge.

Plaintiff Bobby M. Thomas is the owner and president of plaintiff Thomas Supply Company, Inc., a retail building supply company, and plaintiff T. P. Lumber Sales Company, a lumber wholesaler. Defendant William M. Huffman is the owner of WMH, Inc., an independent insurance agency, which conducts business under the name Lanier, Huffman, Robinson (hereinafter "LHR"). For several years prior to 1985, plaintiff companies purchased insurance policies through LHR. In August 1985 Brenda Thomas, Bobby Thomas' wife and also an officer in plaintiff companies, solicited bids from several agencies. She informed an employee of LHR that he had returned the lowest bid and requested him to obtain coverage at the quoted prices to replace several insurance policies which were about to expire. In September LHR informed Mrs. Thomas it had been unable to obtain coverage at the quoted prices and offered new higher quotes. Again, Mrs. Thomas requested coverage. In late October and early November, LHR informed Mrs. Thomas that it had been unable to obtain coverage at the rate of the second quote. Because Mrs. Thomas knew that three of the companies' policies were expiring, she instructed LHR to obtain coverage.

On December 19, 1985, LHR's employee brought three written policies to plaintiffs' place of business. A policy of fire, theft and collision insurance was written by Lloyds of London; premises liability insurance was written by Lumbermens Mutual Insurance Company and business-automobile liability insurance was written by Integral Insurance Company. The final premiums for these three policies were significantly in excess of any of the previous quotes made by LHR. Bobby Thomas refused to accept the Lloyds policy but accepted the other two policies. LHR's employee indicated he would need to have Mr. Thomas' decision on the Lloyds policy in writing and dictated a letter which Mrs. Thomas typed and Mr. Thomas signed instructing LHR to "cancel" the policy. The Lloyds policy was taken back to LHR's office and was not left with plaintiffs. Shortly after the December 19 meeting, the LHR employee telephoned Mrs. Thomas at home

to tell her a penalty of twenty-five percent of the unearned premium would be charged if the Lloyds policy were cancelled. Nevertheless, plaintiffs reiterated that they did not want the Lloyds policy. Plaintiffs had not been informed earlier of the penalty charge. No copy of the endorsement setting forth the unearned premium penalty was shown to plaintiffs. A copy of the policy and the endorsement was placed in evidence at trial. Unlike the other two written endorsements to the policy, the unearned premium penalty endorsement was not numbered, dated or signed by a representative of Lloyds.

Plaintiffs paid in full for the Lumbermens policy on December 31, 1985. On January 17, 1986, plaintiffs changed the agent of record on the Integral policy from LHR to another insurance agency and on January 20 that agency paid the full premium on the policy to LHR on behalf of plaintiff Thomas Supply Company. Mr. Huffman testified that he made a business decision to have plaintiffs' policies cancelled by the issuing insurance companies when Bobby Thomas refused to pay $5,418.80 as the penalty owing on the Lloyds policy. The evidence showed that on February 2, 1986, Mr. Huffman telephoned a representative of Lumbermens Mutual and asked him to cancel plaintiffs' policy on the ground that plaintiffs owed his agency money. The representative informed Mr. Huffman that Lumbermens Mutual could not cancel its policy unless money was owed on the policy itself. After this conversation Mr. Huffman learned that Lumbermens Mutual had issued an audit endorsement and a bill for an additional premium of $6,212 was sent to plaintiffs. The record shows plaintiffs did not receive the bill until February 6. However, on February 6 or 7, Mr. Huffman telephoned Lumbermens Mutual and informed the representative that plaintiffs now owed money on their policy and again requested the policy be cancelled. Lumbermens Mutual issued a cancellation notice dated February 7. Two banks, which were plaintiffs' creditors on insured property, were notified that the policy had been cancelled for "non-payment." On February 3, Integral Insurance Company issued a notice of cancellation reflecting on its face that the reason for cancellation was "agent's request." Mr. Huffman admitted that the Integral policy was cancelled at the request of LHR. At the time Integral's policy was cancelled LHR had been notified that plaintiffs had changed their agent of record to one of its competitors.

LHR received the unearned premium refunds for the two cancelled policies and retained the sum of $5,418.80 which it claimed was owed on the Lloyds policy. Plaintiffs were able to reinstate the Integral policy through the new agency, but obtained coverage to replace the Lumbermens Mutual policy at a cost of $1,032.23 more than the premium charged by Lumbermens Mutual.

Plaintiffs brought this action against defendants for conversion of the sum allegedly owed to Lloyds, tortious interference of contractual

relations and defamation. The jury returned a verdict against defendants on all counts and awarded damages totalling $279,170.60 including punitive damages. Defendants appeal the denial of their motion for judgment notwithstanding the verdict.

1. Defendants first argue plaintiffs have no right to recover in tort. According to defendants, plaintiffs' right of action, if any, is in contract and the exclusive remedy for plaintiffs' claim is the recovery of a statutory penalty for failure to return unearned premiums as set forth in OCGA § 33-24-44 (c) (3). Unlike the claim in *EBCO Gen. Agency v. Mitchell*, 186 Ga. App. 874 (368 SE2d 782) (1988), the issues in controversy in this case do not involve simply the amount owed as refund for unearned premiums on a cancelled policy. The issues in this case involve whether the policies were wrongly cancelled and whether funds were wrongly withheld. The rule that an action in tort cannot be maintained in regard to a breach of a contractual duty applies only where the duty breached arose solely from the contract between the parties. See *Jet-Air, Inc. v. Nat. Union Fire Ins. Co.*, 189 Ga. App. 399 (3) (375 SE2d 873) (1988); *Long v. Jim Letts Oldsmobile*, 135 Ga. App. 293 (2) (217 SE2d 602) (1975). The alleged breach of duty in this case related to a duty of care imposed by law and not merely the breach of a duty imposed by the terms of the contract. See *Bank South, NA v. Harrell*, 181 Ga. App. 64 (2) (351 SE2d 263) (1986). Where, as here, an insured's suit is not upon the contract but in tort, the penalty provisions of the Code relating to breach of insurance contracts do not control the case. See *United States Fidelity &c. Co. v. Evans*, 116 Ga. App. 93 (2) (156 SE2d 809) (1967).

2. Defendant LHR argues it was entitled to judgment on plaintiffs' claims of tortious interference with contractual relations because it was acting as the agent of the insurance companies with which plaintiffs contracted for insurance. It is true, as defendant argues, that the tort of interference with contractual relations requires interference with the performance of a contract between the plaintiff and a third party. See *Energy Contractors v. Ga. Metal Systems*, 186 Ga. App. 475 (4) (367 SE2d 324) (1988). Citing *Jet-Air, Inc. v. Nat. Union Fire Ins. Co.*, supra, defendant argues it cannot be liable for any communications or actions in regard to plaintiffs' contracts with the insurance companies because defendant was acting within the scope of its duty as agent for the companies. Generally, one engaged in selling insurance is held to be the legal agent of an insurer when the agent is granted authority by the insurer to bind coverage. See *Alexander Underwriters v. Lovett*, 177 Ga. App. 262 (2) (339 SE2d 368) (1985). An employee of defendant LHR testified the defendant had no authority to bind coverage with either Lumbermens Mutual or Integral Insurance Company. Thus, evidence was presented whereby the jury could conclude that defendant LHR was not the agent of the

companies and therefore defendant was not entitled to judgment as a matter of law on the claim for tortious interference with contractual relations.

3. Evidence was presented that defendant Huffman personally made the request to Lumbermens Mutual to cancel plaintiffs' policy. However, the evidence in regard to the Integral Insurance Company policy merely showed that cancellation was made pursuant to "agent's request." Defendant Huffman argues he was entitled to judgment in his favor in regard to plaintiffs' claim of tortious interference with the Integral policy. Although no evidence was presented that Huffman personally communicated with Integral Insurance Company in regard to plaintiffs' policy, the evidence does show that the decision to seek cancellation from both Integral and Lumbermens Mutual was made by defendant Huffman. Therefore, the trial court did not err in failing to grant judgment to defendant Huffman on this claim.

4. We reject the argument that defendants are entitled to judgment on plaintiffs' slander claim. First, defendants argue the trial court erred in allowing plaintiffs to present evidence of slander because plaintiffs' complaint alleged libel and not slander. However, we note that the outline of plaintiffs' claim contained in the pre-trial order refers not only to alleged "libelous statements" but also to what defendants "told" the insurance companies about plaintiffs' failure to pay premiums. Consequently, defendants were on notice that plaintiffs intended to present evidence of oral defamation.

Whether defendants' statements to the insurance companies were statutorily privileged pursuant to OCGA § 51-5-7 (2) and (3) because they were made in good faith was an issue for jury determination. Sufficient evidence was presented whereby the jury could conclude that the statements were made maliciously or wrongly and therefore defendants were not entitled to judgment as a matter of law on the ground the statements were privileged.

Evidence was presented to show the statements that plaintiffs had failed to pay premiums due were false. The publication of false statements about a merchant's failure to pay a debt is actionable. See *Walker v. Sheehan*, 80 Ga. App. 606 (2) (65 SE2d 628) (1949).

Finally, defendants argue that even if the statements made by employees of defendant LHR were slanderous the company cannot be held liable. However, evidence was presented to show defendant Huffman, in his capacity as an officer of the company, expressly authorized the action taken as a "business decision." A corporation may be liable for the speaking of slanderous words by one of its agents where it affirmatively appears the agent was expressly directed or authorized to speak the words in question. *Behre v. Nat. Cash Register Co.*, 100 Ga. 213 (1) (27 SE 986) (1896).

5. We reject defendants' argument that they were entitled to

judgment in regard to the slander claim of plaintiff Bobby Thomas because he was not, individually, a party to the contracts of insurance and was not the subject of the alleged slander. Although defendant Huffman denies he mentioned Bobby Thomas individually when speaking to the representative of Lumbermens Mutual, that representative responded affirmatively, during the videotaped deposition played at trial, to the question asking whether he issued the cancellation notice in response to the representation by defendant Huffman that "Bobby Thomas wouldn't pay the . . . premium." Moreover, an individual may have a cause of action for defamatory statements made about a company when it is known that he is the owner of the company and his name is a component part of the company name. See *Weatherholt v. Howard*, 143 Ga. 41 (84 SE 119) (1915); *Southland Pub. Co. v. Sewell*, 111 Ga. App. 803 (1) (143 SE2d 428) (1965).

6. We find no error in the trial court's refusal to give the three charges requested by defendants on slander. The jury was properly charged on the law of slander and the defense of privileged statements.

7. Neither did the trial court err in failing to charge the jury that a binding contract existed as a matter of law for the policy with Lloyds of London. "The language or conduct necessary to create the contract is simply that which is enough to show that there has been a meeting of the minds." (Citation and punctuation omitted.) *Ray v. Ga. Farm &c. Ins. Co.*, 176 Ga. App. 776, 778 (337 SE2d 779) (1985). Evidence was presented to create an issue for the jury as to whether the parties had agreed to the price of the policy LHR ultimately procured for plaintiffs from Lloyds of London.

8. Citing *Hodgskin v. Markatron*, 185 Ga. App. 750 (1) (365 SE2d 494) (1988), defendants argue the trial court erred in submitting the claim for conversion to the jury. In *Hodgskin*, this court ruled no claim for conversion would lie against a company for commissions owed to a former employee because the claim was not for specific money but merely for a sum of money owed to the employee. Here, however, the claim involved specific funds (i.e., the refund of unearned premiums) rightfully belonging to plaintiffs. Conversion of funds rightfully belonging to another provides an action in tort. *Privitera v. Addison*, 190 Ga. App. 102 (1) (378 SE2d 312) (1989). As this court held in *Privitera*, the enumeration claiming plaintiffs cannot recover for conversion because plaintiffs do not seek recovery of some specific money is without merit. "An exercise of dominion or control over property, which is inconsistent with the legal rights of [a party with a legal interest in the property] is a conversion of the property." Id. at 106.

9. We find no error in the trial court's charge on the law of conversion or in the court's failure to give the charges requested by de-

fendants.

10. We hold that each of defendants' four enumerations of error regarding the size of the award of punitive damages is governed by the Georgia Supreme Court's recent ruling in *Hospital Auth. of Gwinnett County v. Jones*, 259 Ga. 759 (386 SE2d 120) (1989). "We have reviewed the evidence presented in this case and hold, under the circumstances presented, the trial court did not abuse its discretion in refusing to overrule the jury's punitive damage award. Nor, do we find the judgment so excessive as to be unconstitutional." Id. at 766.

11. We reject defendant Huffman's argument that he may not be held personally liable for the acts performed in the name of the defendant corporation. "In Georgia, where a corporate tort is committed, an officer who takes part in its commission or who specifically directs the particular act to be done or who participates or cooperates therein is personally liable for the commission of the tort." *Alexie, Inc. v. Old South Bottle Shop Corp.*, 179 Ga. App. 190, 193-194 (345 SE2d 875) (1986). Defendant Huffman testified that he made the decision to seek cancellation of plaintiffs' policies. Consequently, sufficient evidence was presented to show defendant Huffman was a joint tortfeasor with the corporate defendant and his defense of improper venue is invalid. Those cases relied upon by defendant Huffman to support his argument that an officer may not be held liable for the torts of a corporation are distinguishable. See *Energy Contractors v. Ga. Metal Systems*, 186 Ga. App. 475, supra (in which neither the president of the corporation nor the corporation itself could be liable for tortious interference with the contract in question because the corporation was a party to the contract); *Earnest v. Merck*, 183 Ga. App. 271 (358 SE2d 661) (1987) and *Trans-State v. Barber*, 170 Ga. App. 372 (317 SE2d 242) (1984) (which addressed the issue of individual liability for corporate contractual liabilities). The trial court did not err in failing to charge the jury that individual liability could not be imposed without evidence sufficient to pierce the corporate veil.

12. We reject defendants' argument that testimony, presented to show the signature of Brenda Thomas on the Lloyds of London policy was not authentic, was immaterial and reversible error because it was prejudicial to defendants. Whether that policy was accepted by plaintiffs and then cancelled or was never accepted and merely rejected when plaintiffs learned of the difference between the quoted premium and the actual premium was a material issue for jury determination in the case.

13. We also reject defendants' argument that the trial court erred in failing to charge the jury on the law of ratification. The Lloyds of London policy was either accepted, whether orally or by written signature, or never accepted. The discussions between LHR's employee and the Thomases could not serve to ratify a forged signature on the

contract.

14. Finally, defendants argue the trial court erred in denying their motion for new trial because plaintiffs' counsel made improper argument to the jury in his closing argument. We have reviewed the transcript of the closing argument and find no reversible error. Defendants made no objection to several of the allegedly improper comments. All but one of defendants' objections were sustained. Defendants made no motion for mistrial or for further corrective instructions to the jury. Thus, appellate review was waived. See *Purcell v. Hill,* 220 Ga. 663 (141 SE2d 152) (1965).

*Judgment affirmed. Banke, P. J., and Sognier, J., concur.*

DECIDED FEBRUARY 26, 1990 —
REHEARING DENIED MARCH 23, 1990 — 

*Brinson, Askew & Berry, Robert M. Brinson, C. King Askew, J. Anderson Davis,* for appellants.

*Butler, Wooten, Overby & Cheeley, James E. Butler, Jr.,* for appellees.

*Thomas L. Murphy,* amicus curiae.