A91A0181, A91A0182. READ v. BENEDICT; and vice versa.
(406 SE2d 488)

BIRDSONG, Presiding Judge.

Appellant/cross-appellee (Joan Read) appeals the orders of the superior court denying her motion for new trial on the issue of punitive damages and her motion for reconsideration of partial directed verdict on the issue of interest claimed; and granting appellee/cross-appellant's (Thomas Benedict) motion for judgment notwithstanding the verdict on the issue of attorney fees and striking $26,250 from the verdict and judgment entered. Appellee/cross-appellant has cross-appealed the order of the trial court denying his motion for judgment notwithstanding the verdict or, in the alternative, for new trial on the issues of voluntary payment and unjust enrichment.

This appeal arises from a suit for legal malpractice in which Joan Read in essence averred that Thomas Benedict, an attorney, was neg-

ligent in closing the sale of her family's home then owned by her mother. Closing occurred on or about July 1986. Specifically, Joan Read asserted that Thomas Benedict improperly structured the real estate loan closing against her express wishes so as to cause the tax liens of her husband (John Read) to attach to the property, and then improperly advised her regarding the attachment of these liens. *Held*:

### Case No. A91A0181

1. Appellant asserts the trial court erred in granting appellee's motion for judgment notwithstanding the verdict on the issue of attorney fees and expenses of litigation, because "sufficient evidence of appellee's bad faith was presented at the trial and the trial court erred in granting appellee's motion for judgment notwithstanding the verdict on the issues of attorney fees and expenses of litigation."

Pretermitting the bad faith issue is the question whether appellant's trial tactics failed to preserve the bad faith issue for appellate review. We find the issue has not been preserved.

The record reflects that during the charge conference, the trial judge informed the parties that appellant's request to charge number 12 on the issue of costs of litigation would be given, except he was going to inform the jury that the issue of bad faith would not apply. Then the trial judge expressly informed the parties that "therefore, the *only* way attorney fees could be awarded in this particular action, in my judgment, is that the jury [will] have to find the defendant had been stubbornly litigious or had caused the plaintiff unnecessary trouble and expense." (Emphasis supplied.) Thereafter, appellant's counsel presented "a couple of comments about some [charges] that [he thought] would be erroneous," but did not raise any objection to the trial court's ruling regarding the bad faith issue. Subsequently, the trial court pertinently charged the jury, regarding the award of litigation expenses, that "where the defendant has acted in bad faith in making the contract — and that does not apply in this case because there is no bad faith as this judge has determined in making the contract." Thereafter, when asked if there were any exceptions or objections to the charge, appellant voiced several issues, but did not take any exception or objection to the exclusion of bad faith from applicability during the charge on expenses of litigation.

By failing to object or take timely exception to the trial court's exclusion of the bad faith from jury consideration, whether such exclusion was intentional or accidental, appellant by her own trial tactics assisted in misleading the trial court, generating the ruling and charge at trial, and in preventing the jury from considering the issue of bad faith in its award of litigation expenses. As a result, the jury, under the charge as actually given and to which no exception was

timely taken, could not have awarded attorney fees on the basis of a bad faith finding. On appeal appellant cannot complain of a judgment, order, or ruling that her own procedure or conduct aided in causing. *West v. Nodvin*, 196 Ga. App. 825, 829 (3) (e) (397 SE2d 567). Further, by her conduct at trial, appellant in effect acquiesced in the trial court's ruling that bad faith did not apply, and did thereby abandon any issue of error predicated on the existence of bad faith on appeal. See *Whisnant v. State*, 178 Ga. App. 742, 744 (344 SE2d 536); *Horan v. Pirkle*, 197 Ga. App. 151, 152 (397 SE2d 734).

Moreover, assuming arguendo, the issue of bad faith had not been abandoned, it was without merit. A genuine controversy existed in this case as a matter of law, and the existence of a bona fide controversy generally precludes any claim for attorney fees based on bad faith. See, e.g., *EBCO Gen. Agency v. Mitchell*, 186 Ga. App. 874, 875 (2) (368 SE2d 782). We agree with the trial court that *Backus Cadillac-Pontiac v. Ernest*, 195 Ga. App. 579 (394 SE2d 367) is distinguishable.

Having waived bad faith, there are only two grounds remaining on which the award could be supported. "When bad faith is not an issue and the only asserted basis for a recovery of attorney fees is either stubborn litigiousness or the causing of unnecessary trouble and expense, there is not 'any evidence' to support an award pursuant to OCGA § 13-6-11 . . . if a bona fide controversy . . . exists between the parties." *Dimambro Northend Assoc. v. Williams*, 169 Ga. App. 219, 224-225 (6) (312 SE2d 386). Accord *Jeff Goolsby Homes Corp. v. Smith*, 168 Ga. App. 218 (2) (308 SE2d 564). As a bona fide controversy did exist, the trial court did not err in awarding j.n.o.v. to appellee as to this matter.

2. Appellant asserts there was sufficient evidence to support an award of punitive damages and the trial court erred in granting appellee's motion for directed verdict thereto and in refusing to grant a new trial thereon.

Regarding the error enumerated, we note that punitive damages would not lie as to any ex contractu claim in this case. OCGA § 13-6-10. However as to causes of action grounded in tort, such as exist in this case, an award of punitive damages can lie. See, e.g., OCGA § 51-12-5. Although "[m]ere negligence, although gross" will not support an award of punitive damages (*Associated Health Sys. v. Jones*, 185 Ga. App. 798, 802 (2) (366 SE2d 147)), as to causes of action ex delicto arising before July 1, 1987, which includes a cause of action averred to arise by reason of legal malpractice, punitive damages can be awarded by the jury based upon the existence of aggravating circumstances, in either the act or the intention. OCGA § 51-12-5. "It is well established that that language means such damages cannot be imposed in any case unless there is willful misconduct, malice, fraud,

wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences. The latter expression (conscious indifference to consequences) relates to an intentional disregard of the rights of another, knowingly or willfully disregarding such rights." (Citations and punctuation omitted.) *Petrolane Gas Svc. v. Eusery*, 193 Ga. App. 860 (1) (389 SE2d 355). Ordinarily the imposition of punitive damages is a jury issue; however, the controlling criteria remains whether there is any evidence to support such an award. *Petrolane*, supra at 862.

In this case, there is some evidence, albeit strongly controverted, which if believed by the jury would establish appellee entered an attorney-client relationship not only with the lending institution but with appellant and her husband, Dr. Read; that a potential conflict of interest thereafter arose between the lending institution (which issued lending instructions requiring that Dr. Read acquire title to the property contrary to the wishes of appellant); that a potential conflict of interest also may have existed between appellant and her husband, Dr. Read; that nevertheless appellee continued to represent all parties; that at closing appellee favored the desires and legal interests of the lending institution over appellant and ignored the desires and legal interests of appellant by preparing closing documents that passed title to Dr. Read before vesting title in appellant, Joan Read — with a result Internal Revenue Service (IRS) tax liens recorded against Dr. Read attached to appellant's family home contrary to her express wishes; that appellee failed to make a timely and full disclosure to the Reads of the legal effect of the closing documents in regard to IRS tax liens attachment, thereby precluding them from making an informed choice whether to elect not to close and to seek another lending institution; and, that appellee in whom appellant put her trust because he was "the attorney" advised her it was required that the property be transferred to Dr. Read, but that by recording the deeds together the IRS tax lien would not attach to the property.

A motion for directed verdict cannot be granted if there is any evidence, *direct or circumstantial*, creating a material issue of fact. *Armech Svc. Co. v. Rose Elec. Co.*, 192 Ga. App. 829, 831 (2) (386 SE2d 709); *Reeb v. Daniels Lincoln-Mercury Co.*, 193 Ga. App. 817 (1) (a) (389 SE2d 367). As the record contains *some* although certainly not an abundance of evidence, evidencing that entire want of care by appellee which would raise the presumption of conscious indifference to the consequences, the issue of punitive damages should have been placed with the jury for resolution. Thus, the trial court erred in granting a directed verdict in behalf of appellee as to the issue of punitive damages, and in refusing to grant appellant a new trial. The evidence, *with all reasonable deductions therefrom*, does not demand a particular verdict pertaining thereto. See generally

*Armech,* supra at 831.

3. Appellant asserts that her claim for interest was supported by sufficient evidence and the trial court erred in granting appellee's motion for directed verdict on the interest claim. We disagree. No competent evidence was introduced at trial to establish the prime rate applicable to the interest calculation. Prime rate fluctuates and is not a proper subject for judicial notice. The trial court properly did not take judicial notice of the prime rate and instruct the jury regarding such fact. Moreover, because of its fluctuating nature, the particular prime rate at any given moment is not the type of fact normally to be found within a person's "general knowledge and experience" of which the jury sua sponte could take "judicial cognizance." See generally Green, Ga. Law of Evid. (3d ed.), § 6. Further, an individual juror could "not act on his private knowledge" of the applicable prime interest rate (OCGA § 9-10-6), and the jury, either individually or as a group, could not base its award of interest upon speculation. *McGarr v. McGarr,* 239 Ga. 640 (4) (238 SE2d 427). As we find no competent evidence of record sufficient to enable the jury to calculate the applicable prime rate and, thus appellant's interest claim with reasonable certainty (compare *Crankshaw v. Stanley Homes,* 131 Ga. App. 840 (207 SE2d 241)), the grant of directed verdict as to the interest claim was not erroneous.

### Case No. A91A0182

4. For the following reasons, we are satisfied that the trial court did not err in denying cross-appellant Benedict's motion for judgment notwithstanding the verdict or, in the alternative, for new trial on the issue of voluntary payment.

We find that *Ins. Co. &c. v. Kyla,* 193 Ga. App. 555 (388 SE2d 530), *Atlanta Milling Co. v. Norris Grain Co.,* 271 F2d 453 (5th Cir.), and the other cases involving voluntary payment, cited in cross-appellant's brief, are distinguishable from the facts of this case. For example, the cases which cross-appellant relies upon do not involve a three-cornered transaction culminating in a tort claim similar to the case sub judice. Additionally, in *Ins. Co. &c.,* supra, Insurance Company of North America was "attempting to recover the excess payment" therein involved and was not attempting to recover damages for tortious conduct. Accordingly, these cases are not controlling.

Cross-appellant asserts that, subsequent to closing, Joan Read voluntarily made certain payment to the IRS to obtain release of the tax liens of the premises, and accordingly such voluntary payments are not recoverable under the provisions of OCGA § 13-1-13.

In denying the motion, the trial court inherently concluded the defense of voluntary payment would not apply to preclude a plaintiff

from recovering damages in a tort action from a tortfeasor merely because plaintiff previously had made payment to a third-party creditor in settlement of an indebtedness which had been proximately caused by the negligence of the tortfeasor in question. Moreover, the trial court expressly declined to apply the defense of voluntary payment to a so-called "three-cornered transaction, culminating in a tort claim"; thus a voluntary payment by Joan Read to the IRS, and not to attorney Thomas Benedict, to remove the tax liens was in effect held not to give rise to a legitimate defense of voluntary payment within the meaning of OCGA § 13-1-13. We agree.

Although OCGA § 13-1-13 in appropriate circumstances clearly could be applied in a suit brought by plaintiff so as to preclude recovery from "the other party" of the amount originally given by the plaintiff to "the other party" in voluntary payment of a "claim," (compare *First Nat. Bank &c. v. Mayor &c. of Americus*, 68 Ga. 119; *Arnold & DuBose v. Ga. R. &c. Co.*, 50 Ga. 304; see *Camp v. Phillips*, 49 Ga. 456), the statute on its face does not apply to a three-cornered transaction culminating in a *tort* claim for *damages* (such as exists in this case). Generally, "[i]n construing a legislative act, a court must first look to the literal meaning of the act. [Cit.] If the language is plain and does not lead to any absurd or impracticable consequences, the court simply construes it according to its terms and conducts no further inquiry." *Diefenderfer v. Pierce*, 260 Ga. 426, 427 (396 SE2d 227). To construe OCGA § 13-1-13 so as to preclude the award of *damages* in a suit grounded in *tort* when the alleged voluntary payment involved was to a third party not involved in a suit for the purpose of satisfying a claim caused by the negligence of the defendant tortfeasor would produce an *absurd* result. In such circumstances, it becomes the duty of the courts to seek to construe the statute so that it makes good sense while remaining "faithful to the legislative intent." *Telecom*USA v. Collins*, 260 Ga. 362, 364 (393 SE2d 235). We decline to give OCGA § 13-1-13 the construction sought by the cross-appellant and hold that the defense of voluntary payment is not available in this instance.

5. Cross-appellant's assertion that the trial court erred in denying his motion for judgment notwithstanding the verdict or, in the alternative, for new trial on the issue of unjust enrichment also is without merit. The trial court in essence concluded the defense of unjust enrichment does not apply where the award by the jury is based on "evidence of damage in a tort action."

"No person is unjustly enriched unless the retention of the benefit would be unjust." 66 AmJur2d, Restitution & Implied Contracts, § 3. Viewing the record in its entirety and in light of this principle, we are satisfied that cross-appellee has not been unjustly enriched by the jury's award of damages.

For the reasons above stated, the judgments of the trial court are affirmed, except as to its holdings granting appellee's motion for directed verdict and refusing to grant new trial on the issue of punitive damages.

*Judgments affirmed in part and reversed in part. Pope and Cooper, JJ., concur.*

DECIDED MAY 13, 1991 —
REHEARINGS DENIED JUNE 4, 1991 AND JUNE 10, 1991.

*Jones, Brown, Brennan & Eastwood, Taylor W. Jones, Rebecca A. Copeland,* for appellant.

*Freeman & Hawkins, H. Lane Young II, Joseph A. Roseborough,* for appellee.